## State of Vermont *v.* Arthur E. Thompson.

(84 A2d 594)

October Term, 1951.

Present: Jeffords, Cleary, Adams and Blackmer, JJ. and Shangraw, Supr. J.

Opinion Filed November 6, 1951.

*Richardson & Caldbeck* and *Henry F. Black* for the respondent.

*John H. Downs,* State's Attorney, for the State.

Cleary, J. This is a prosecution for breach of the peace, brought in Caledonia municipal court under V. S. 47, § 8458. Trial by jury, verdict of guilty. The case is here on the respondent's exception to the denial of his motion for a directed verdict of not guilty at the close of the evidence.

The respondent is a hardware merchant in Hardwick and on July 1, 1950, sold fifteen dynamite caps to Anthony Washburn, a boy fifteen years old, who put them in a paper bag furnished by the respondent. Washburn later placed the fifteen caps in a tin box with other dynamite caps and hid the box behind a shed. About three weeks later the box containing the caps was found by another boy who gave some of the caps to other children. Some of the caps were lost or thrown away. Each of two children exploded a cap and each was injured. The inhabitants of Hardwick became quite agitated and a public meeting was held where children were instructed and warned against the danger of dynamite caps. This prosecution followed.

The State concedes that if there was a breach of the peace it took place at the time of the sale on July 1, 1950, and says in its brief that the only issue before this Court is "If a storekeeper sells fifteen dynamite caps, in a paper bag, known to him to be dangerous, to a fifteen year old juvenile, is he guilty of a breach of the Peace?"

In *State* v. *Archibald,* 59 Vt 548, at 552, 9 A 362, this Court held that the law was correctly stated by the court below when it charged the jury that "the public peace is that sense of security which every person feels and which is necessary to his comfort and for which government is instituted, and a breach of the public peace is the invasion of the security and protection which the law affords every citizen." *State* v. *Coffin,* 64 Vt 25, 26, 23 A 632, states that this Court has defined the offense legislated against to be one "calculated to put one in fear of bodily harm, and disturbing that quiet and repose, which constitute essentially the comfort and rest of social life" and that the act must be one which will be likely to put a person of ordinary firmness in such a state of fear. *State* v. *Mancini,* 91 Vt 507, at 510, 101 A 581, 583, quotes 8 RCL 285: "The question whether certain conduct constitutes a breach of the peace often depends largely upon the circumstances of the particular case. An act which would be lawful in some circumstances may amount to a breach of the peace if done in other circumstances." The Court then says at p. 512: "The importance of the attending circumstances as an element in determining whether the conduct complained of amounts to a breach of the peace, is indicated by many adjudged cases, and is fairly apparent from the statutory characterization of the act as one which disturbs or breaks the public peace."

The crime charged here is a breach of the peace by tumultuous and offensive carriage. This term embraces an endless variety of acts and incidents as shown by cases in this Court from *State* v. *S. S.,* 1 Tyler 180, to *State* v. *Ploof,* 116 Vt 93, 95, 70 A2d 575, so consideration of the attending circumstances is particularly important. The State makes no claim that the sale in question was unlawful and agrees with the respondent that the fact that injuries occurred three weeks after the sale is immaterial. The respondent is not on trial for a negligent act but for a criminal one.

In his oral argument the State's Attorney conceded there was no actual breach of the peace but claimed it was enough that a threat of a breach of the peace could result. The State contends that a reasonable person could not help but know or anticipate that vio-

lence and a disturbance of the public peace might result from the placing of fifteen very dangerous dynamite caps in the hands of a juvenile and that the case at bar comes clearly within the rule stated in *Cantwell* v. *State of Connecticut,* 310 US 296, 60 S Ct 900, 906, 84 L Ed 1213, 128 ALR 1352. It is stated in the opinion in that case that one may be guilty of breach of the peace if he commits acts or makes statements likely to provoke violence and disturbance of good order, even though no such eventuality is intended and that when clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious. The court in holding that no breach of the peace had been committed said the act must be such as to raise a "clear and present menace to public peace and order." The State also relies on *People* v. *Most,* 171 NY 423, 64 NE 175, 58 LRA 509, where a breach of the peace at common law is defined as a disturbance of public order by an act of violence, or by any act likely to produce violence.

The case at bar does not come within these rules or definition because it cannot be said that when the respondent sold the dynamite caps he knew or ought to have known that his act would likely, that is probably, provoke or produce violence and disturbance of good order or that there was a clear and present danger or immediate threat to public safety, peace or order.

"In the honest ardour to suppress crime, we must not, as a Court, give an unwarranted construction to the statute." *State* v. *S. S., supra.* Here the danger or threat to public safety, peace or order was not present, direct or immediate but was remote. It is not enough that the respondent's act could produce violence. Otherwise any and every sale of explosives for whatever purpose would be a breach of the peace. In order to convict the respondent it was encumbent upon the State to prove more than a mere possibility that the respondent's act might produce violence or a disturbance of public peace. *Paquin* v. *St. Johnsbury Trucking Co.,* 116 Vt 466, at 472, 80 A2d 669. This the State failed to do. Therefore, it was error to deny the respondent's motion for a directed verdict of not guilty. *Judgment and sentence reversed. Judgment that the respondent is not guilty and he is discharged.*