W. PATRICK DONLIN, District Attorney, Price County
You request my opinion "as to whether a trespass to an outbuilding, unauthorized and without the consent of any person lawfully upon the premises which would fit the other requirements of 943.14, would be a violation thereof."
In connection with such request, you have advised me as follows:
"Situations have recently developed wherein persons have, without authorization, entered outbuildings in various localities and have not entered the dwelling house of the property owner. Such entry has been without the consent of the owner of the property."
In giving you my opinion on the above-stated question, I am assuming that when you refer to the trespass therein described as one "which would fit the other requirements of 943.14," you mean that it is a trespass occurring, in the language of sec. 943.14, Stats., "under circumstances tending to create or provoke a breach of the peace." I am further assuming that when you refer to an "outbuilding" in such question, you are employing such word in its ordinary sense, namely, a building "separate from but accessory to a main house * * *" See Webster's Third New International Dictionary, p. 1601.
Making the above-stated assumptions, it is my opinion that the "trespass to an outbuilding" taking place under the circumstances you describe would be a violation of sec. 943.14, Stats. Such opinion is based on my belief that the word "dwelling," as employed in sec. 943.14, Stats., has its common law meaning hereinafter shown.
The word "dwelling," appearing in sec. 943.14, Stats., is not defined therein, or elsewhere in our statutes. In the absence of such definition, there is a degree of ambiguity in the use of such word in sec. 943.14, Stats. "The term [dwelling] is not free from ambiguity, but is one of multiple meaning." (Bracketed material mine; 28 C.J.S. Dwelling or Dwelling House at p. 599.) With "dwelling," in *Page 18 
its use in question, having an ambiguous meaning, a construction of sec. 943.14, Stats., with reference to the principles of the common law in force at the time of its passage (1955) is required. See 82 C.J.S. Statutes, sec. 363. See also State exrel. Schwenker v. District Court (1932), 206 Wis. 600, 604, wherein the Court said: "Statutes should be construed as far as possible in harmony * * * with the common law." As a word having a "definite and settled meaning at common law," the word "dwelling" in sec. 943.14, Stats., is "presumed to be employed in the same [common law] sense, and will be so construed unless an intent to the contrary clearly appears." (Bracketed material mine; 82 C.J.S., Statutes, sec. 363) Nothing in sec. 943.14, Stats., clearly shows an intent on the part of the Legislature that "dwelling," as used therein, should have a meaning other than its common law meaning. At common law, it meant "the cluster of buildings in which a man with his family resides," extending to "such outbuildings as are within the curtilage."[1] SeeUnited Carbon Company v. Conn. (1961) Ky. 351 S.W.2d 189, 190. See also Italian-American Building and Loan Ass'n v. Russo
(1942), 28 A.2d 196, 198, 132 N.J. Eq. 319; People v. Silverman
(1959), 183 N.Y.S. 2d 700, 702; Hales's Pleas to the Crown, Vol. 1, p. 557; Perkins on Criminal Law, 2d Ed., pp. 203, 204; and 43 A.L.R. 2d 831, et seq. Art. XIV, sec. 13, Wisconsin Constitution, reads: "Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature." The above-mentioned meaning of the word "dwelling" was clearly a part of the common law, reasonably applicable to the "situation and government" of Wisconsin when the Constitution of this state was adopted. See Coburn v. Harvey (1864), 18 Wis. *148, *149; Huberv. Merkel (1903), 117 Wis. 355, 365. In my judgment, such meaning was therefore a part of the common law in force in the territory of Wisconsin at the time the Wisconsin Constitution was adopted, and was not inconsistent therewith. It therefore became a part of the law of this State, and so remains, since it has not been "altered or suspended by the legislature." *Page 19 
In sum, then, it is my opinion that the term "dwelling" used in sec. 943.14, Stats., has the common law meaning above shown, and therefore the trespass you describe in your question would be a violation of sec. 943.14, Stats.
Several matters warrant brief comment before closing this opinion.
First, it is worthy of note that no reported Wisconsin case has dealt with the meaning of "dwelling," as used in statutes such as sec. 943.14, Stats., dealing with so-called "offenses against the habitation." It would appear that only in Trible v. TowerInsurance Co. (1968), 43 Wis.2d 172, 186, has the Wisconsin Supreme Court dealt with the meaning of "dwelling," and then not in the context of a criminal statute, but in the context of an insurance policy. (The Court has dealt with the term "dwelling house" on several occasions, but that is a term distinct from "dwelling," and easily subject to a much narrower interpretation).
Second, the fact that a trespass under sec. 943.14, Stats., must be "under circumstances tending to create or provoke a breach of the peace" does not indicate that "dwelling," as used in such statute, is employed in its narrowest sense, to indicate only a building usually occupied by persons lodging therein at night. See 28 C.J.S. Dwelling or Dwelling House at pp. 600, 601. A "breach of the peace" is a term covering a variety of conduct. See Vol. 5A, Words and Phrases, Perm. Ed., p. 297 et seq.; 11 C.J.S., Breach of the Peace, secs. 1-6, inc. Among other things, a breach of the peace involves conduct calculated to put one in fear of bodily harm, and disturbing that quiet and repose which constitute, essentially, the comfort and rest of social life. SeeState v. Thompson (1951-Vt.), 84 A.2d 594, 595. It involves an act "likely to put a person of ordinary firmness" in a state of fear of bodily harm. Ibid. Plainly, such an act can easily take place, not only in that part of a dwelling which provides night lodging for the occupants thereof, but in an outbuilding separate from but accessory to the "main house" containing the sleeping quarters, and within the curtilage.
Third, the fact that sec. 943.14, Stats., provides that its violator must be one who, inter alia, "intentionally enters the dwelling of another without the consent of some person lawfullyupon the premises" (Emphasis mine) does not give rise, in my judgment, to *Page 20 
an implication that "dwelling" can and does mean, in the context of sec. 943.14, Stats., only a house containing sleeping quarters, where occupants thereof might ordinarily be found. "Premises," it has been said, is a word of "broad and varied meaning," with such meaning dependent on the circumstances in which such word is used, and to be determined by its context. SeeState v. Myers (1941-Mo.), 147 S.W.2d 444, 447; Gibbons v.Brandt (1948-7 C.A.), 170 F.2d 385, 387. As used in sec. 943.14, Stats., "premises" would seem to mean not only buildings, but the lands on which they are situate; and so used, I believe that such word creates no implication that "dwelling" is employed in sec.943.14, Stats., in a sense more restrictive than its common law meaning.
Fourth, if and when you are compelled to decide whether a given outbuilding comes within the compass of the word "dwelling," as used in sec. 943.14, Stats., I would suggest that you consult the excellent annotation, referred to hereinabove, found in 43 A.L.R. 2d 831 et seq.
RWW:JHM
[1] As to what constitutes an outbuilding within the "curtilage," in the enlarged sense applicable to the customs of America, as distinguished from those of England see 43 A.L.R.2d, pp. 834, 837-838.