STATE of Wisconsin, Plaintiff-Respondent,

v.

James R. KASTER, Defendant-Appellant.†

Court of Appeals

*No. 88-0447-CR. Submitted on briefs August 31, 1988.—Decided January 19, 1989.*

(Also reported in 436 N.W.2d 891.)

791

For the defendant-appellant the cause was submitted on the briefs of *Stephen J. Eisenberg* and *Eisenberg Law Offices, S.C.,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Jerome S. Schmidt,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J. James Kaster appeals from a judgment convicting him of three counts of theft, party to the crime, sec. 943.20(1)(d), (3)(b) and (3)(c), Stats., and from an order denying postconviction relief.[1] The issues are: (1) whether the trial court erred by admitting evidence of other bad conduct; (2) whether the state impermissibly bolstered the credibility of a witness's testimony; (3) whether newly discovered evidence requires a new trial; (4) whether the court improperly imposed restitution on two sentences; (5) whether the court should have modified the sentences; and (6) whether the interests of justice require a new trial.

Except for the restitution question, we resolve all issues contrary to Kaster's position. We reverse that part of the judgment ordering restitution on the first two counts for which Kaster was sentenced and otherwise affirm.

## 1. *Other Crimes Evidence*

Peter Hegge testified that in early February 1984 Kaster gave him a credit card in Kaster's name. On February 24, 1984, Kaster gave him several credit cards, his checkbook, and a "shopping list" of computers and other items Kaster wanted him to buy, using Kaster's credit cards and checks and forging his name. According to Hegge, Kaster said he would report to the police that his credit cards and checkbook had been stolen.

Hegge testified that on February 24, 1984, he went to a Madison store where he represented himself as

[1]The crime described in sec 943.20(1)(d), Stats., is that of obtaining title to property of another "by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made." The penalty varies with the value and nature of the property, as set forth in sec. 943.20(3). The party to the crime statute is sec. 939.05, Stats.

James Kaster and bought a particular model of a computer which Kaster had told him to buy, writing a check on Kaster's account. When the clerk asked him for identification, he displayed Kaster's credit card and a driver's license bearing Kaster's name. He purchased a second computer at another Madison store on February 25, 1984 and a third computer at a third Madison store on February 27, 1984, using Kaster's checks and identification. He delivered the three computers to Kaster.

A university police officer testified that on February 27, 1984, Kaster reported that he had lost his wallet and checkbook in a classroom on February 22, 1984. An employee for the bank where Kaster maintained his account testified that Kaster claimed each check Hegge had written was a forgery.

The other bad conduct evidence consisted of Hegge's testimony about a previous impersonation scheme. According to Hegge, in December 1983 Kaster said he was being sued in Green Bay and would like to get out of it. Kaster was to appear at the office of a Madison attorney. Kaster suggested that Hegge represent himself as Kaster to the attorney in order to give the appearance of two James Kasters and to convince the attorney that he had the wrong one. Hegge agreed and met Kaster on the date of the appointment, at which time Kaster give him his wallet and checkbook. Hegge then impersonated Kaster when meeting the attorney. He again impersonated Kaster at unspecified dates before the same attorney.

Hegge decided to open a post office box in Milwaukee to strengthen the appearance that there were two James Kasters, but he lacked sufficient identification. Kaster told him to get a driver's license with a Milwaukee address. In January 1984 he went to the

Department of Motor Vehicles with Kaster's expired driver's license and obtained a new license, showing a false address in West Allis. The new license bore Hegge's photograph and Kaster's name. Although he later used it to make purchases in Kaster's name, Hegge testified that he obtained the license only to deceive the attorney and not to deceive merchants.

Prior to the trial, Kaster moved to exclude the evidence regarding Hegge's impersonations of him before the attorney. Kaster argued that those impersonations had nothing to do with the alleged scheme to deceive merchants. Kaster contended that evidence of those impersonations would be offered to show that he was acting in conformity with the character of a person who is liable to do bad things. The state argued that the evidence was admissible since it explained how Hegge obtained a driver's license bearing Kaster's identification and Hegge's photograph. The trial court ruled that the evidence was relevant to the alleged scheme to deceive merchants and was further evidence of it, and that the prejudice to Kaster from its introduction did not outweigh its probative value. The court therefore denied the motion to exclude the evidence.

The prosecution may not introduce evidence of other crimes or bad conduct of the defendant unless the evidence is substantially relevant for some purpose other than to show that because of the defendant's criminal character, the defendant probably committed the crime charged. *McCormick on Evidence,* sec. 190, at 557–58 (3d Ed. 1984). *State v. Pharr,* 115 Wis. 2d 334, 343–44, 340 N.W.2d 498, 502 (1983), held that determining whether to admit other crimes evidence is a two-step process: the court must determine whether the evidence was offered for an acceptable purpose under

904.04(2), Stats., and then determine whether the probative value of the evidence outweighs the danger of prejudice to the defendant. The *Pharr* court implicitly acknowledged that the first step includes a determination whether the other crimes evidence is relevant to an issue in the case. *Id.* at 344, 340 N.W.2d at 502–03.

Relevant evidence has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Sec. 904.01, Stats. Whether evidence is relevant is a discretionary decision which we review only for abuse. *Pharr,* 115 Wis. 2d at 345, 340 N.W.2d at 503.

Kaster's use of Hegge to impersonate Kaster at his appointment with the attorney tended to make more probable the existence of facts relevant to the charged offenses. Under sec. 939.05(2), Stats., the state had the burden to show that Kaster had directly committed the crime, intentionally aided or abetted Hegge in its commission, or advised, hired, counseled or procured Hegge to commit it. Kaster's delivery of his identification to Hegge to assist in the impersonation of Kaster at the attorney's office made it less likely that Hegge coincidentally found Kaster's "lost" checkbook and credit cards and more likely that Kaster had intentionally given these items to Hegge to deceive merchants. Kaster's help in obtaining a driver's license bearing Kaster's name and Hegge's picture also made it more probable that Kaster was planning or joining in a scheme in which a false driver's license would be useful, such as deceiving merchants. The prosecution stated that without this evidence, the state could not explain how Hegge acquired Kaster's identification. The court

did not abuse its discretion when it ruled that the evidence was relevant.

Kaster assumes that evidence of bad conduct which is relevant to the charges against a defendant, in order to be admissible, must come within one of the exceptions in sec. 904.04(2), Stats. That assumption has no basis. Section 904.04(2) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *This subsection does not exclude the evidence when offered for other purposes,* such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. [Emphasis added.]

Evidence regarding Hegge's impersonation of Kaster to the attorney was offered for purposes other than to prove Kaster's character and that he acted in conformity with his character. It was offered because it tended to make more probable the truth of the state's claim that Kaster participated in Hegge's deception of merchants. To be admissible, the evidence of other bad conduct need not be offered to prove the exceptions specified in sec. 904.04(2), Stats: opportunity, etc. The specified exceptions to the exclusion are merely illustrative and not exclusive.

Other conduct testimony has been admitted for purposes not limited to proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. *See Hammen v. State,* 87 Wis. 2d 791, 798, 275 N.W.2d 709, 713 (1979) (evidence of prior acts admitted as probative of defendant's state of mind); *State v. Kuta,* 68 Wis. 2d 641, 644–45, 229 N.W.2d 580, 582 (1975) (evidence of prior misconduct

admissible to show defendant's state of mind); *State v. Siebert,* 141 Wis. 2d 753, 761, 416 N.W.2d 900, 904 (Ct. App. 1987) (reference to pending sexual assault charge against defendant admissible to show context of intimidation of witness).[2] In *State v. Shillcutt,* 116 Wis. 2d 227, 236, 341 N.W.2d 716, 720 (Ct. App. 1983), *aff'd on other grounds,* 119 Wis. 2d 788, 350 N.W.2d 686 (1984), we noted that sec. 904.04(2), Stats., excludes bad conduct evidence only when offered "to prove the character of a person in order to show that he acted in conformity therewith."[3]

[2] *Compare State v. Wedgeworth,* 100 Wis. 2d 514, 531–33, 302 N.W.2d 810, 819–20 (1981) (evidence that defendant's residence contained pistols and shotgun admissible as circumstantial evidence that defendant was drug dealer).

[3] Section 904.04(2), Stats., and Federal Rule of Evidence 404(b) contain identical lists of permissible uses for other crimes evidence and are "identical in meaning." *State v. Schindler,* 146 Wis. 2d 47, 53, 429 N.W.2d 110, 113 (Ct. App. 1988). We will interpret the Wisconsin Code of Evidence as federal courts have interpreted like sections of the Federal Rules of Evidence. *Id.* at 54, 429 N.W.2d at 113. Federal courts have concluded that the list of permissible uses in Rule 404(b) is not exclusive and that evidence of other crimes may be admitted if not offered to prove the conduct of a person by resort to an inference from his or her character, regardless of whether it fits within one of the listed uses. *See United States v. Mendez-Ortiz,* 810 F.2d 76, 79 (6th Cir. 1986), *cert. denied,* 480 U.S. 922 (1987) (defendant's attempt to bribe and threaten witness admitted to show consciousness of guilt); *United States v. McKoy,* 771 F.2d 1207, 1214 (9th Cir. 1985) (defendant's purchase of stolen goods from codefendant admitted to show nature of relationship between defendant and codefendant in prosecution for conspiracy); and *Bradbury v. Philips Petroleum Co.,* 815 F.2d 1356, 1364 (10th Cir. 1987) (prior complaints by others against defendant for trespass and property damage admitted to show pattern of reckless disregard for plaintiff land owners' rights and to support plaintiffs' claims for outrageous conduct and punitive damages). Dictum from other

After determining the relevancy of the other acts evidence, the trial court balanced the probative value of that evidence against the risk of unfair prejudice or waste of time and ruled that the evidence was admissible. No error is assigned to that step in the court's exercise of its discretion.

We conclude that the trial court did not abuse its discretion when it admitted evidence of Hegge's impersonations of Kaster at the attorney's office.

### 2. *"Bolstering" Credibility*

Kaster asserts that the prosecution "impermissibly bolstered" Hegge's testimony. The challenged questions to Hegge and his answers pertained to a pretrial agreement between Hegge and the prosecution and to what the prosecution said would happen if he lied on the stand, whether he had told the truth on the stand, and what would happen if he told the truth. Kaster contends that this "bolstering" of Hegge's credibility is improper, citing *United States v. Mazza,* 792 F.2d 1210, 1215 (1st Cir. 1986), *cert. denied,* 479 U.S. 1086 (1987).

*Mazza* involved testimony by government agents regarding a witness's statements to them describing certain events, followed by the witness's testimony again describing those events. *Id.* The *Mazza* court condemned the use of the agents' testimony as "bolstering" since the jury heard the government's case three times, twice from the agents and once from the witness. *Id. Mazza* did not involve questions to a witness regarding a pretrial agreement between the prosecution and the witness.

circuits supports this conclusion. *See United States v. Long,* 574 F.2d 761, 766 (3d Cir.), *cert. denied,* 439 U.S. 985 (1978); *United States v. Percy,* 765 F.2d 1199, 1203 (4th Cir. 1985); *United States v. Boroni,* 758 F.2d 222, 224 (7th Cir. 1985); *United States v. Estabrook,* 774 F.2d 284, 287 (8th Cir. 1985).

The questions and answers disclosed an agreement between the state and the witness. A defendant's right to a fair trial is safeguarded by such disclosure when coupled with the opportunity to examine the witness and instructions cautioning the jury to carefully evaluate the credibility of the witness. *State v. Nerison,* 136 Wis. 2d 37, 46, 401 N.W.2d 1, 5 (1987). If that disclosure is "bolstering," then there is nothing wrong with it.

We reject Kaster's contention that this procedure allows the prosecution to vouch for the credibility of a witness. It does not. It is nothing more than a disclosure of facts affecting that credibility.

3. *New Trial On Grounds of Undiscovered Evidence*

The trial ended on December 5, 1985. A few days later the court received a package containing Kaster's credit cards and check book and an anonymous letter stating that the merchandise covered by the three counts on which Kaster had been convicted was stored in a particular warehouse. The letter proved to be true. On December 11, 1984 "Peter Burns" purportedly signed a rental agreement for the storage unit in which the merchandise was found. The lessor entered the unit in March 1985 because the rent had not been paid. The lessor's employee stated in an affidavit that she met Kaster in January 1986 and could not identify him as the person who rented the unit in December 1984. A handwriting expert was unable to determine whether Kaster's handwriting matched that on the application.

During the trial the state claimed that Kaster obtained the merchandise by deception because he was in financial difficulty and had a balloon payment due on a land contract in May 1984. Kaster contends that it makes no sense that he would obtain these items in

February 1984, rent a storage facility in December 1984,[4] put the items into it, stop paying the rent and allow the items to be discovered in March 1985.

A motion for a new trial on grounds of newly discovered evidence is addressed to the sound discretion of the trial court, and we may reverse the trial court's decision whether to grant a new trial only for abuse of discretion. *State v. Sarinske,* 91 Wis. 2d 14, 37, 280 N.W.2d 725, 735–36 (1979). The motion should not be granted unless: (1) the evidence came to the moving party's knowledge after the trial; (2) the moving party has not been negligent in seeking to discover it; (3) the evidence is material to the issue; (4) the evidence is not merely cumulative to that which was introduced at trial; and (5) it is reasonably probable that a new trial will reach a different result. *Id.* Each test must be satisfied to entitle the moving party to a new trial. *Id.* at 38, 280 N.W.2d at 736. In the trial court's view, the new evidence would merely arouse speculation which nobody—the defense, the prosecution or the court—could answer. The court concluded that were a reasonable jury to hear the new evidence, the result would not be different, and therefore denied the motion.

We agree that it is unlikely that a second jury hearing the new evidence would reach a different result. The case was largely a matter of Hegge's credibility. Kaster did not testify. Hegge's story was plausible, and the jury chose to accept it. Hegge testified that he delivered merchandise to Kaster. That the merchandise showed up after the trial fails to impeach Hegge's testimony. How the goods got to the warehouse and why

---

[4]Kaster was arrested on October 12, 1984.

their existence was subsequently revealed to the court is a matter of pure speculation. Since we are not satisfied that bringing these matters to the attention of the jury would probably cause a different result, the fifth requirement of granting a new trial has not been met. We conclude the trial court did not abuse its discretion when it denied the motion for a new trial.

### 4. *Restitution*

The trial court sentenced Kaster to two years on the first count and two years on the second count, to be served consecutively. The court ordered probation on the third count on the condition that Kaster make restitution on all three counts on which he was convicted: $1,250.00 on the first count, $2,600.00 on the second, and $2,550.00 on the third.

Restitution is a reasonable and proper condition of probation. Sec. 973.09(1)(b), Stats. But restitution cannot be imposed for an offense for which the defendant is sentenced to prison. *Garski v. State,* 75 Wis. 2d 62, 74–75, 248 N.W.2d 425, 432 (1977).

The state therefore concedes that the trial court should not have entered a judgment of probation conditioned on restitution for the first two counts on which Kaster was sentenced to prison. That part of the judgment of probation will be reversed. The part of the judgment of probation conditioned on restitution for the third count remains unaffected.

### 5. *Sentence Modification*

Kaster began serving his sentence immediately but was later released on bail pending appeal. While Kaster was out on bail, the court heard his motion for modification of his sentence. He relies on his post-sentence conduct. The prison staff favorably view his attitude and assistance in updating their computer

system. He asserts that since his release on bail, he has programmed prison computers and contributed about 200 hours to that task. During his release he has been employed at a computer store and excelled as a salesman, paid his delinquent state and federal income taxes, and has had no further involvement with illegal activities.

The trial court denied Kaster's motion because it concluded that post-sentence good behavior is not a new factor to be considered when a defendant seeks modification of the sentence. Kaster argues that since the trial court possesses inherent power to modify its sentence, a new factor is not required for sentence modification, but if a new factor is required, good conduct outside prison while on release should be considered.

■■■■■■

While a trial court has inherent power to modify its sentence, *State v. Martin,* 121 Wis. 2d 670, 673, 360 N.W.2d 43, 45 (1985), it cannot do so solely on reconsideration and reflection and a deliberate change of mind. *Id.* at 674 n. 1, 360 N.W.2d at 45. A trial court must base a sentence modification on new factors. *Scott v. State,* 64 Wis. 2d 54, 59, 218 N.W.2d 350, 353 (1974). A new factor is a fact relevant to imposition of the sentence and not known to the trial court at the time of the original sentencing, either because it did not then exist or because the parties unknowingly overlooked it. *Rosado v. State,* 70 Wis. 2d 280, 288, 234 N.W.2d 69, 73 (1975). Whether a fact satisfies this standard is a question of law. *State v. Krueger,* 119 Wis. 2d 327, 333, 351 N.W.2d 738, 742 (Ct.App. 1984). We do not defer to the trial court's determination whether a new factor has been established to support a motion to modify a sentence. *Id.*

Post-sentence conduct is not a new factor for sentence modification purposes. This is true even if that conduct consists of the defendant's favorable progress in the prison rehabilitation system. *Krueger,* 119 Wis. 2d at 335, 351 N.W.2d at 742. Consideration of that progress "lies solely with the department of health and social services." *Id.* We reject the argument that individuals released from prison pending appeal should have their sentence modified for good conduct outside of the prison. We see no distinction between rehabilitation in and outside prison.

*Skipper v. South Carolina,* 476 U.S. 1, 7 (1986), does not support Kaster's contention that good conduct outside prison is a new factor relevant to sentence modification. *Skipper* dealt with good conduct before sentencing. The question was whether the jury should hear evidence of a defendant's good adjustment in jail while his case was pending when the jury decided whether to impose the death penalty. *Id.* at 4. The *Skipper* Court set aside the death sentence because exclusion of that evidence impeded the jury's ability to consider all relevant facets of the defendant's character and record. *Id.* at 8.

Kaster next argues that to deny him modification of his sentence for good conduct outside prison denies him due process and equal protection under the United States Constitution and Wisconsin Constitution. Part of his argument rests on claimed disparate treatment by the state of probationers and persons released from prison.[5] We do not review this contention. It was never

---

[5] According to Kaster, probation agents routinely ask trial courts to modify probation to periods of 60 to 90 days in jail for bad

raised before the trial court. While it is within our discretion to review constitutional contentions made for the first time on appeal if no factual issues exist, *In Interest of Baby Girl K.,* 113 Wis. 2d 429, 448, 335 N.W.2d 846, 856 (1983), we are unwilling to accept Kaster's statement of facts not in the record without a thorough examination by the trial court.

### 6. *Reversal in Interests of Justice*

■

Before we may grant a new trial in the interests of justice under our discretionary authority in sec. 752.35, Stats., we must conclude that the real controversy has not been fully tried or we must determine to a substantial degree of probability that a new trial will likely produce a different result. *State v. Wyss,* 124 Wis. 2d 681, 735–36, 370 N.W.2d 745, 770–71 (1985).

■

Kaster contends that if a second jury hears the evidence discovered after his trial and if the jury does not hear the "other conduct" evidence and the "bolstering" testimony, he will be acquitted. We remain unconvinced that the second trial should be conducted as he claims or that such a trial would probably result in his acquittal. We deny his request for a new trial to the extent that it is based upon sec. 752.35, Stats.

As part of his argument that a new trial should be granted in the interests of justice, Kaster contends that his rights to due process and to a fair trial under the United States Constitution and the Wisconsin Constitution have been violated. According to Kaster, one week before the trial, the state offered to dismiss all counts against him in exchange for a plea of no contest

conduct. Kaster asserts there is no reason why courts cannot do so for good conduct after sentencing.

to one count of theft by fraud and one count of false swearing, for which the state would recommend three years probation and restitution of $2,500 with no jail or prison time. Because the state asked for a sentence of six years after he was found guilty, Kaster argues he was punished for exercising his right to proceed to trial and that a presumption of unconstitutional vindictiveness exists which has never been rebutted. Kaster refers only to part of the "sentencing memorandum" his attorney submitted to the trial court to establish the facts on which he bases his argument.

Briefs by counsel do not establish facts. The trial court made no findings of fact regarding a plea bargain or the state's conduct. Nor was the court asked to make such findings at the sentencing hearing. The state cannot be faulted for failing to offer evidence rebutting a supposed presumption when the record fails to establish that the presumption has arisen.

*By the Court.*—Judgment on Count 3 reversed in part insofar as it mandates restitution on Counts 1 and 2 and judgment and order otherwise affirmed.