STATE of Wisconsin, Plaintiff-Respondent,

v.

Daniel E. VON LOH, Defendant-Appellant.†

Court of Appeals

*No. 89-1736-CR. Orally argued March 22, 1990.—Decided June 14, 1990.*

(Also reported in 458 N.W.2d 556.)

†Petition to review denied.

91

For the defendant-appellant the cause was submitted on the briefs of and orally argued by *Peter L. Steinberg* of *King Street Alternative Law Office* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of and orally argued by *Robert J. Kaiser, Jr.,* and *Linda L. Remeschatis,* assistant district attorneys, of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J. Daniel E. Von Loh appeals from a judgment convicting him of criminal trespass to dwellings and lewd and lascivious behavior contrary to secs. 943.14 and 944.20(2), Stats. There are three issues: (1) whether the trial court erred in considering a pending criminal charge against Von Loh when sentencing him; (2) whether the state proved that Von Loh's conduct tended to create or provoke a breach of the peace as required by sec. 943.14; and (3) whether he should be granted a new trial in the interests of justice. We resolve all issues against Von Loh and affirm the judgment and order.

Von Loh, posing as a lingerie salesman from a local apparel store, came to the homes of three different women asking whether he could model men's underwear for them. Once inside their homes, he proceeded to model clothing which exposed his genitals. In another instance, Von Loh telephoned a woman claiming to be conducting a sex survey. The next day he arrived,

uninvited, at her place of residence and walked into the house when she opened the door. He then tried to persuade her to let him model underwear. Eventually, and at her insistence, he left.

After a jury trial, Von Loh was convicted of four counts of criminal trespass to dwellings and three counts of lewd and lascivious behavior. Other facts will be referred to in the body of the opinion.

## I. THE SENTENCING

At the sentencing hearing, the state offered into evidence the transcript of a preliminary hearing in another pending case in which Von Loh had been bound over for trial on charges of burglary and first-degree sexual assault. The court considered the transcript in sentencing him. The state eventually dismissed the sexual assault and burglary charges after two trials resulted in hung juries. Von Loh then filed a postconviction motion in this case, asking for reconsideration of his sentences in light of the dismissal. He also sought a new trial. The trial court denied the motion and Von Loh appealed.

Von Loh, appearing to concede that the court could consider pending charges in sentencing him, argues that a different rule should apply where, as he claims is the situation here, the pending charge was "far more serious" than any of the offenses for which he was being sentenced and, additionally, where the pending charge was never proved in court. He contends that, under those circumstances, consideration of the pending charge was "fundamentally unfair" in light of the presumption of innocence attending all defendants in criminal cases, and thus violated his right to due process of law.

In *State v. McQuay,* 154 Wis. 2d 116, 126, 452 N.W.2d 377, 381 (1990), the supreme court recognized that: "In determining the character of the defendant and the need for his [or her] incarceration and rehabilitation, the [sentencing] court must consider whether the crime is an isolated act or a pattern of conduct. Evidence of *unproven offenses* involving the defendant may be considered by the court for this purpose." (Emphasis added.) *See also Elias v. State,* 93 Wis. 2d 278, 284, 286 N.W.2d 559, 562 (1980), where the court stated:

> [T]he trial court in imposing sentence for one crime can consider other unproven offenses, since those other offenses are evidence of a pattern of behavior which is an index of the defendant's character, a critical factor in sentencing. [We have held] that the trial court could consider offenses which were uncharged and unproven. The trial court can also consider pending charges for which there has been no conviction. [Citations omitted.]

The same appears to be true even with respect to charges that are, or have been, dismissed. In *Elias,* for example, the court, emphasizing "[t]he responsibility of the sentencing court . . . to acquire full knowledge of the character and behavior pattern of the . . . defendant before imposing sentence," relied on two federal cases approving the use of the underlying factual bases of dismissed counts in a sentencing proceeding. *Id.,* 93 Wis. 2d at 285, 286 N.W.2d at 562, citing *United States v. Martinez,* 584 F.2d 749, 750 (5th Cir. 1978), and *United States v. Majors,* 490 F.2d 1321, 1324 (10th Cir. 1974), *cert. denied,* 420 U.S. 932 (1975).

The crux of Von Loh's argument is that because the other, more serious, charge was eventually dismissed after two "hung jury" trials, he was being punished in

this case for offenses for which he had never been—and now never could be—convicted. We disagree.

The trial court began its sentencing analysis by rejecting probation on grounds that such a sanction "neither addresses the seriousness of the offenses in the context of [Von Loh's] criminal record [n]or provides adequate protection to the community, and it unnecessarily and inappropriately would depreciate the seriousness of the course of conduct." Then, again emphasizing the seriousness of Von Loh's conduct, the court stated: "It is serious because a violation of a person's dwelling is a violation of a zone of privacy and security which is . . . carefully protected . . . and [constitutes] a very significant and fundamental value in our society." The court also referred to the sexual activities engaged in by Von Loh while in the women's homes as "assaultive" and "assault[s] of a fundamental nature" which citizens have a right to be protected against.

Turning to Von Loh's character, the court noted that the offenses, in the context of his prior record, were "consistent with the pattern of conduct in the past." Then, considering the pending sexual assault charge, the court noted first that consideration of the preliminary hearing transcript had to be undertaken "with caution" because not only had the court not heard the testimony itself, but, more importantly, it was "only a probable cause hearing," and Von Loh had not been convicted of any of the charges. The court continued:

> [B]ut I think the question for the public and . . . for me in particular is, is this a dangerous person? Is this a person from whom we need not only protection because of his potential for annoyance, or . . . [might] other victims . . . be more harmed than these [victims] . . . apparently were [?]

I need to know whether or not potentially these could have been dangerous situations, and I think that the evidence in the preliminary examination suggests that these may well have been highly dangerous situations to these victims . . . .. The fact was that each of [the women] dealt with [Von Loh] in a non-confrontational manner. They did not humiliate him. They did not confront him.

The transcript . . . suggests that, had they acted otherwise, he might have acted otherwise.

The court then concluded that Von Loh was in need of rehabilitation and "a long period of strict . . . incarceration or supervision . . . to get at [his] problem [which has not been corrected] even though there has been intervention over a long period of time by the criminal justice system."

After imposing prison sentences on the seven counts, the court stated as follows with respect to the pending sexual assault charge:

I want to be very explicit that I have not enhanced any sentence assuming that [Von Loh] committed other offenses. I have taken into consideration the evidence of [his] character. I have not punished him for an offense for which he has not been convicted, and I have specifically circumscribed my sentence to make it clear that I have not done so.

■

The court's statements at the sentencing hearing satisfy us that it was not, as Von Loh asserts, punishing him in this case for his alleged conduct in the since-dismissed case. The court, as it stated, was considering the preliminary hearing testimony as evidence of Von Loh's character, as in *McQuay* and *Elias,* and we see nothing "fundamentally unfair" or otherwise violative of

97

his due process rights in the manner in which the court used that transcript at his sentencing hearing.

## II. BREACH OF THE PEACE

Von Loh next argues that the state failed to prove that his conduct tended "to create or provoke a breach of the peace" as required by sec. 943.14, Stats.[1] He relies on Black's Law Dictionary 171 (5th ed. 1979), which defines a "breach of the peace" as "[a] violation or disturbance of the public tranquility and order. The offense of breaking or disturbing the public peace by any riotous, forcible, or unlawful proceeding." (Citation omitted.) Von Loh argues that the facts proved by the state "failed to show any violent, abusive, or unruly conduct" by him, and that he "left when requested" and "did not obstruct or threaten" the women.

We reject Von Loh's narrow definition of the phrase in the context of the criminal trespass statute. The pattern jury instruction on criminal trespass to dwellings states that "[i]t is not necessary that an actual breach of the peace occurred as a result of defendant's conduct. The term 'breach of the peace' includes *all* violations of peace and order." Wis JI–Criminal 1437 (1985) (emphasis added). The comment to the instruction refers to the disorderly conduct instruction, Wis JI—Criminal 1900 (1990), as instructive on the breach-of-the-peace element of the offense. The latter instruction states that conduct may provoke a disturbance even though "it may not be violent, abusive,

---

[1] Section 943.14, Stats., provides that: "Whoever intentionally enters the dwelling of another without the consent of some person lawfully upon the premises, *under circumstances tending to create or provoke a breach of the peace,* is guilty of a Class A misdemeanor." (Emphasis added.)

indecent, profane, boisterous, or unreasonably loud" (footnote omitted).

The attorney general, in an opinion discussing the offense of criminal trespass to dwellings, concluded that a breach of the peace within the meaning of the statute involves conduct that is "calculated to put one in fear of bodily harm, and disturbing that quiet and repose which constitute, essentially, the comfort and rest of social life. It involves an act 'likely to put a person of ordinary firmness' in a state of fear of bodily harm." 62 Op. Att'y Gen. 16, 19 (1973), quoting *State v. Thompson,* 84 A.2d 594, 595 (Vt. 1951).

While those authorities are not binding on this court, we agree with the attorney general and the Supreme Court of Vermont that, as applied to the offense of criminal trespass to a dwelling, the required breach of the peace need only be such as to put the victim in fear of bodily harm or otherwise disturb or disrupt the peace and sanctity of the home.

Section 943.14, Stats., is not a disorderly conduct statute or one relating to disturbances of the public peace and good order. It is thus distinguishable from *State v. Maker,* 48 Wis. 2d 612, 180 N.W.2d 707 (1970), *cert. denied,* 401 U.S. 1013 (1971), and the other cases cited by Von Loh—all of which involve sec. 947.01, Stats., a statute appearing in the chapter entitled "Crimes Against Public Peace, Order and Other Interests," and penalizing "violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct in which the conduct tends to cause or provoke a disturbance."

The statute at issue here, sec. 943.14, Stats., punishes trespass. It is a property crime. It punishes one for nonconsensual entry and objectionable conduct in the private residence of another. In that sense, it bears

no relation to traditional "public" breach of the peace offenses. It is much more akin to the so-called "self-help" repossession laws which give secured creditors the right to take possession of collateral without judicial process if it can be accomplished "without breach of the peace." The majority of cases construing such laws hold that no violence or threat of violence need occur before a breach of the peace may be found.[2]

In this case, each of the women whose homes Von Loh entered were upset and frightened by his conduct. One testified that she asked him to leave several times and that she was "[v]ery, very uncomfortable." She stated: "I was standing there in my pajamas, and my daughter was sleeping, and I was home alone and actually a little bit frightened." Another stated that when Von Loh exposed himself to her she was "[v]ery uncomfortable, very embarrassed, scared, because . . . if he can expose himself to me like that, I didn't know what else he would do." She stated that she "just wanted him to be gone" and that she "was worried about trying to get him out of the apartment without anything else happening." The third testified that she "was really, really afraid, really scared." She was afraid that if she asked him to leave "he might have done something to [her]."

---

[2]The authorities are reviewed *in extenso* in *Bloomquist v. First Nat. Bank of Elk River,* 378 N.W.2d 81, 85-86 (Minn. Ct. App. 1985). In that case, the Minnesota court, noting that that state's highest court had adopted the view that a nonviolent, unconsented-to entry to retake possession of a tenant's premises constituted a breach of the peace, stated, after reviewing the cases, that "[t]he requirement of violence apparently represents a minority view." *Id.* at 86.

Where, as here, a defendant challenges the sufficiency of the evidence to support the jury's verdict, the test is whether the evidence adduced, believed, and rationally considered by the jury was sufficient to prove his or her guilt beyond a reasonable doubt.

> Conversely stated, the test is whether, when considered most favorably to the state and the conviction, the evidence is so insufficient in probative value and force that it can be said as a matter of law that no trier of facts acting reasonably could be convinced to that degree of certitude which the law defines as "beyond a reasonable doubt." Furthermore, it is not necessary that this court be convinced of the defendant's guilt but only that the court is satisfied the jury acting reasonably could be so convinced. *State v. Koller,* 87 Wis. 2d 253, 266, 274 N.W.2d 651, 658 (1979) (citations omitted).

We will interfere with the jury's finding only if, under all the evidence, "the jury *could not* have found guilt beyond a reasonable doubt." *State v. Alles,* 106 Wis. 2d 368, 377, 316 N.W.2d 378, 382 (1982) (emphasis in original). Thus, "if any possibility exists that the jury *could* have drawn the appropriate inferences from the evidence . . . to find the requisite guilt, we will not overturn a verdict even if we believe that a jury *should* not have found guilt based on the evidence before it." *Id.* (emphasis in original).

In this case, Von Loh obtained entry to the women's homes on false pretenses, exposed himself to them and placed them in varying degrees of fear for their own safety and that of their families. We have no difficulty concluding that the evidence of his actions in each case

101

was adequate to permit the jury to find that he had violated sec. 943.14, Stats.

### III. NEW TRIAL IN THE INTEREST OF JUSTICE

Von Loh's last argument is only two sentences long. He requests that we order a new trial be granted in the interest of justice because of "the apparent unfairness of his trial." Before we may order a new trial in the interests of justice under the discretionary authority granted to us by sec. 752.35, Stats., we must conclude either that the real controversy has not been fully tried or that there is a substantial degree of probability that a new trial will likely produce a different result. *State v. Kaster*, 148 Wis. 2d 789, 805, 436 N.W.2d 891, 898 (Ct. App. 1989). Von Loh has not demonstrated through references to the record or to case law that the real controversy was not fully tried or that a new trial would be likely to produce a different result. We therefore reject his request. *Lechner v. Scharrer*, 145 Wis. 2d 667, 675-76, 429 N.W.2d 491, 495 (Ct. App. 1988).

*By the Court.*—Judgment and order affirmed.

SUNDBY, J. *(concurring in part, dissenting in part).* I concur in all parts of the majority opinion except that I would remand the case to the trial court for resentencing. The trial court correctly considered at the time of sentencing, a pending sexual assault charge against Von Loh. "At sentencing, pertinent factors relating to the defendant's character and behavioral pattern cannot be immunized by a plea agreement between the defendant and the state . . .. Evidence of such character and behavior *includes unproven offenses, be they uncharged or pending.*" *State v. McQuay*, 148

102

Wis. 2d 823, 826-27, 436 N.W.2d 905, 906 (Ct. App. 1989) (citation omitted) (emphasis added). However, a new factor was presented when the defendant informed the trial court by his postconviction motion that he had been tried twice on the sexual assault charge and, in each case, the state was unable to obtain a verdict of guilty. It is fundamentally unfair for the state to charge a person with a crime, be unable to prove the crime, but yet sentence the defendant as if he or she had been convicted of the crime.

"Trial court sentence modification in Wisconsin is restricted to cases in which the sentencing court abused its discretion or in which 'new factors' relevant to the imposition of sentence are present." Comment, *Sentence Modification by Wisconsin Trial Courts,* 1985 Wis. L. Rev. 195, 205. *See also* Comment, *Wisconsin Sentence Modification: A View From the Trial Court,* 1989 Wis. L. Rev. 441. I do not question that the trial court properly exercised its discretion in the original sentencing of Von Loh. However, Von Loh presented a new factor to the trial court which it should have considered in determining whether to modify Von Loh's sentence. "Presence of a new factor does not automatically entitle the defendant to relief; rather, the new information is presented to the court for consideration within the exercise of its discretion." Comment, *Sentence Modification by Wisconsin Trial Courts,* 1985 Wis. L. Rev. at 206 (footnote omitted).

The Wisconsin Supreme Court first alluded to the new factor basis for sentence modification in *Hayes v. State,* 46 Wis. 2d 93, 175 N.W.2d 625 (1970). *Id.* In *Hayes,* the trial court reduced the defendant's sentence upon learning that the court was misinformed at the time of sentencing as to the defendant's previous criminal record. Three years after *Hayes,* in *State v.*

*Foellmi,* 57 Wis. 2d 572, 581, 205 N.W.2d 144, 149 (1973), the court adopted the American Bar Association's standards relating to sentencing alternatives and procedures, spelled out in sec. 6.1(a) as follows:

> It may be appropriate to authorize the sentencing court to reduce or modify a sentence within a specified time after its imposition or the final resolution of an appeal if new factors bearing on the sentence are made known. . . .

The *Foellmi* court did not define "new factor," but in *Rosado v. State,* 70 Wis. 2d 280, 288, 234 N.W.2d 69, 73 (1975), the court stated:

> [T]he phrase "new factor" refers to a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

The Comment suggests that, in practice, the supreme court's working definition of a "new factor" is "facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of the original sentencing, absent competing policy considerations which require that the new facts be excluded from trial court consideration." 1985 Wis. L. Rev. at 218. I see no policy consideration which would require that the trial court exclude from its consideration the fact that the state has been unable to prove the charges which the trial court considered at the time of sentencing.

A review of the sentencing transcript reveals that the trial judge considered the pending sexual assault charge against Von Loh to be highly relevant to the

imposition of sentence. The trial judge correctly viewed the transcript of Von Loh's preliminary hearing on the sexual assault charge with caution but, nonetheless, observed "that is evidence which suggests that the defendant is a violent person, has the potential for violence, and I think it is relevant." The trial judge also stated: "I need to know whether or not potentially these could have been dangerous situations, and I think that the evidence in the preliminary examination suggests that these may well have been highly dangerous situations to these victims."

In view of the weight the trial court gave to the sexual assault charge against Von Loh, I believe the trial court, to completely exercise its discretion, must consider the fact that the state twice failed to prove the charges against Von Loh.

For these reasons, I would remand the cause to the trial court for reconsideration of Von Loh's sentence.