# COURT OF APPEALS
## DECISION
## DATED AND FILED

## January 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1984-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2018CF469**

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

CORY LAVELLE CLARK,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Rock County: KARL HANSON, Judge. *Affirmed.*

Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Cory Lavelle Clark appeals a judgment of conviction for two counts of armed robbery by use of force, one count of second-degree recklessly endangering safety, and one count of possession of a firearm by a felon. Clark argues that the evidence was insufficient to support the jury verdicts, and that the circuit court erred by admitting identification testimony by a police officer who was testifying as a lay witness. For the reasons set forth in this opinion, we reject those arguments and affirm.

¶2 Clark was charged with multiple criminal offenses based on an armed robbery at a bar in Beloit. The State introduced the following evidence at trial. Around 11:30 a.m. on May 19, 2018, two men entered the bar with guns and demanded money from the two employees who were present. Surveillance video of the robbery was played for the jury. One of the men was wearing a mask and the other was wearing a hood and sunglasses. The State's theory was that the assailant in the hood and sunglasses was Clark.

¶3 One of the bar employees testified that, when police first showed her a photo array following the robbery, she picked a photo that was not Clark and felt "20 percent sure" that photo depicted the assailant in the hood and sunglasses. However, at trial, she testified that Clark's photo was the man with the hood and the sunglasses from the robbery.

¶4 Three witnesses testified that they recognized Clark as the man in the hood and sunglasses in a still photograph taken from the bar surveillance video that police posted on social media. The first witness, M.L., testified that Clark is the father of her grandchildren and that she recognized him in the surveillance photograph shown on the police department Facebook page. The surveillance photograph was displayed to the jury, and M.L. testified that she was "99.9, 100

percent" certain that Clark was the person in the photograph. She also testified that her daughter, who we refer to as M.G.L., is the mother of Clark's children. M.L. further testified that M.G.L. had told her that Clark placed a gun to M.G.L.'s head during a fight.

¶5 The second witness, M.G.L., testified that she recognized Clark in the surveillance video photographs posted on the police department's Facebook page. M.G.L. testified on cross-examination that she spent a night in jail because Clark received a fleeing ticket while using her car, and she had to pay $800 as a result of that ticket. Additionally, on cross-examination, M.G.L. testified that she learned that Clark was expecting a baby with another woman while M.G.L. was pregnant with Clark's child, and that Clark and M.G.L. broke up in April 2018, after Clark pointed a gun at her.

¶6 The third witness, police officer O'Mollay Lomax, testified that he knew Clark for "one or two years or so" from "public establishments." Lomax testified that he would generally run into Clark at a lounge "every once in a while," and that their conversation was limited to "[j]ust, 'Hey, man. What's up.'" Lomax stated that he was not involved in the investigation in this case, and that he recognized Clark from the surveillance photograph that the police department posted on its Facebook page.

¶7 Another witness testified that, on the morning of the robbery, he was walking in a park near the bar when he observed two men—one with a face covering, a baseball cap, and sunglasses, and the other in a hooded sweatshirt, a baseball cap, and sunglasses—run down a street, get into a dark blue Chevrolet Malibu, and drive away. The witness provided three letters from the license plate, AAK. An officer testified that Clark was stopped by police while driving a dark

blue Chevrolet Malibu with a license plate beginning with AAK two days prior to the robbery. Additionally, the owner of that Chevrolet Malibu, T.M., testified that she allowed Clark to drive her car on one previous occasion, when Clark was pulled over by police. She also testified, however, that she had both keys to the car on the date of the robbery, so Clark could not have been driving it on that date. An investigating officer testified that a dark blue Chevrolet Malibu captured on surveillance video driving by the bar was T.M.'s vehicle that police recovered as part of their investigation.

¶8 Clark presented an alibi witness who testified that he saw Clark at an event in Janesville sometime between 11:30 a.m. and 12:45 p.m. on the day of the robbery. Another alibi witness testified that Clark came to his house between 11:00 and 11:30 a.m. that day, and that he then drove Clark to the Janesville event, leaving Beloit between 11:35 and 11:40 a.m. A third alibi witness testified that Clark arrived at the Janesville event around 11:30 a.m. However, M.G.L., the mother of Clark's children, testified that Clark stopped by her home to pick up tickets to the Janesville event after 12:00 p.m. Phone record evidence showed that the phone number that Clark provided to police during the traffic stop was associated with a cellular phone that, on May 19, 2018, was located in Beloit between 10:53 a.m. and 4:54 p.m. and in Janesville between 5:20 and 8:29 p.m.

¶9 The jury found Clark guilty on all counts. Clark appeals.

¶10 First, Clark argues that the evidence was insufficient to support the jury verdicts. *See* **State v. Von Loh**, 157 Wis. 2d 91, 101, 458 N.W.2d 556 (Ct. App. 1990) ("Where, as here, a defendant challenges the sufficiency of the evidence to support the jury's verdict, the test is whether the evidence adduced, believed, and rationally considered by the jury was sufficient to prove his or her

guilt beyond a reasonable doubt."). He contends that the photograph taken from the surveillance video, which witnesses testified was Clark, was insufficient to establish his identity. Clark argues that the photograph used to identify him was a "fuzzy" photograph of a man in a hood turned partially to the side, with the top half of his face shaded to the extent that the photo "could be almost any black man with a mustache and perhaps a beard." He argues that the testimony by M.L. and M.G.L. identifying Clark as the man in the photograph was insufficient to sustain the convictions because M.L. and M.G.L. were biased against him. Additionally, he argues that Lomax had insufficient familiarity with him to be able to identify him in the indistinct photograph. Finally, Clark contends that the other evidence introduced at trial—including the evidence related to the Chevrolet Malibu and inconsistent identification of Clark by one of the bar employees from a photo array—was so lacking in probative value that no reasonable jury could have found guilt beyond a reasonable doubt. *See State v. David J.K.*, 190 Wis. 2d 726, 740, 528 N.W.2d 434 (Ct. App. 1994).

¶11 We conclude that Clark has failed to meet his burden to show that the evidence was insufficient to support the jury verdicts. The evidence at trial, outlined above, was sufficient for the jury to find that Clark was the man whose image was captured on the bar surveillance video. We are not persuaded that the quality of the photograph from the surveillance video rendered it incapable of supporting the witness' identifications. Although the subject's face is partially obscured by shadow, the lower portion of the subject's face is sufficiently visible for a person familiar with that person to identify him. Clark has argued reasons that the jury should have discounted the witness identification testimony, but he has not established that their testimony was incredible as a matter of law. *See State v. Norman*, 2003 WI 72, ¶68, 262 Wis. 2d 506, 664 N.W.2d 97 ("The jury is

the ultimate arbiter of a witness's credibility."). Additionally, the evidence related to the Chevrolet Malibu was potentially significant evidence that further supported the jury's verdicts, and it does not matter that it was circumstantial evidence. *See State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990) ("[C]ircumstantial evidence is oftentimes stronger and more satisfactory than direct evidence."). Viewing the evidence in the light most favorable to the State and the conviction, as we must, *see id.* at 500, we conclude that the evidence was not insufficient to support the verdicts.

¶12     Second, Clark argues that the circuit court erred by allowing Lomax to testify, over Clark's objection, that he recognized Clark in the photograph from the surveillance video. Clark contends that Lomax did not have sufficient personal familiarity with him to satisfy the standards for lay witness opinion testimony under WIS. STAT. § 907.01 (2019-20).[1] He contends that Lomax's identification of Clark in the photo was not "[r]ationally based on the perception of the witness," as required under § 907.01, because Lomax saw Clark only "once in a while." Clark argues that Lomax's testimony therefore lacked sufficient foundation. He also contends that any probative value the evidence had was substantially outweighed by the danger of unfair prejudice, *see id.*, because Lomax's status as a police officer imparted his testimony with undue weight.

¶13     The decision to admit or exclude evidence rests within the circuit court's discretion. *See State v. Warbelton*, 2009 WI 6, ¶17, 315 Wis. 2d 253, 759 N.W.2d 557. We conclude that the circuit court properly exercised its discretion

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

by admitting Lomax's identification testimony. Lomax testified that he was able to recognize Clark in the surveillance photograph based on his contacts with Clark at a bar on at least an occasional basis over a year or two. Thus, there was a reasonable basis for the circuit court to determine that his identification was rationally based on his perception. *See* WIS. STAT. § 907.01. Nothing in Lomax's testimony indicated that he was basing the identification on his expertise as a law enforcement officer. *See **id.*** We are not persuaded that the probative value of Lomax's testimony was substantially outweighed by the danger of unfair prejudice. Clark provides no reason that Lomax's testimony would have been unfairly prejudicial beyond the fact that Lomax was a police officer. However, the mere fact of Lomax's occupation as a police officer does not render his lay testimony unfairly prejudicial. We discern no basis to disturb the circuit court's exercise of discretion in admitting the testimony. We affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.