ROSADO, Plaintiff in error, v. STATE, Defendant in error.

*No. State 228 (1974).  Argued October 2, 1975.—Decided
October 28, 1975.*
(Also reported in 234 N. W. 2d 69.)

For the plaintiff in error there were briefs by *Howard B. Eisenberg*, state public defender, and *Robert J. Paul*, assistant state public defender, and oral argument by *Mr. Paul*.

For the defendant in error the cause was argued by *William L. Gansner*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

WILKIE, C. J.   This review involves a 1973 judgment of conviction of the plaintiff in error, Miguel Rosado, for sexual intercourse with a child in violation of sec. 944.10 (2), Stats., Rosado's sentence to a prison term of fourteen years, and the trial court's denial of Rosado's motion to reduce that sentence.

We reject the complaints made by the plaintiff in error to the sentencing procedures employed by the trial court, but we find an abuse of discretion by the trial court in imposing the fourteen-year sentence and we reduce that sentence to seven years.

Prior to the commission of the offense for which he was convicted, Rosado was living in Waukesha, Wisconsin. He had a steady job, a common-law wife and five children, a house with a mortgage, and no prior criminal record. During 1972 he met Karen Williams, a fifteen-year-old girl living with her mother in Milwaukee. Although Mrs. Williams initially objected to the relationship between Karen and Rosado, she acquiesced after Karen insisted that she would see him on the sly unless they were permitted to meet openly. Karen had first

told Rosado that she was eighteen, but both she and her mother revealed her true age once the relationship came out into the open. On November 7, 1972, Rosado co-signed a note with Mrs. Williams so that she could purchase a car. At that time it came out that he was thirty-three years old, and had a common-law wife.

On November 17, 1972, Rosado picked Karen Williams up at school, and they drove to his cousin's house in Chicago. They returned to Milwaukee two days later and stayed together at the Park Hotel. At about 12:30 a.m. on November 20, 1972, they voluntarily engaged in the one act of intercourse which is the basis of the conviction.

A complaint and warrant were issued on November 27, 1972, but Rosado was not arrested until May 13, 1973. After bindover defendant pled not guilty, and a jury trial was scheduled for November 14, 1973. On that date, however, the prosecution and defense announced to the court that a plea bargain had been reached, and that Rosado wished to change his plea to guilty in return for a recommendation of probation. The trial court inquired at length into the voluntariness of the plea, and informed Rosado that it was not bound by any agreement between him and the district attorney. Policewoman Janet Carter was called to provide the factual support for the plea. She testified that Karen Williams had told her that in addition to the act of sexual intercourse at the Park Hotel, she and defendant had had intercourse twice while in Chicago. After the defendant was questioned, the court took Karen, Mrs. Williams, and Policewoman Carter into chambers for an off-the-record conference. When they returned the court announced that it would order a presentence report before any further proceedings, including acceptance of the guilty plea, took place.

Another hearing was held on December 14, 1973. The judge immediately accepted Rosado's guilty plea and found him guilty of one violation of sec. 944.10 (2),

Stats. (statutory rape). By this date all parties had received copies of the presentence report. This report did not, however, contain any sentencing recommendation. Mrs. Lupe King, a probation and parole officer, was present at the hearing, and she had been asked by the trial court to investigate "an additional matter," to report her findings to the court, and to make a sentencing recommendation. This "additional matter" was a trip made by Rosado and Karen to Puerto Rico. King testified that Mrs. Williams and Karen had told her that Karen and the defendant had left Milwaukee on Christmas Eve, 1972, and that Karen had not returned until Mother's Day, which was sometime in May, 1973. During part of this time, according to Karen and Mrs. Williams, Karen and Rosado had lived together in Puerto Rico, and had engaged in consensual acts of intercourse, fellatio, and sodomy. Rosado subsequently left Puerto Rico and returned to Wisconsin without Karen, who was left stranded. Eventually, according to the story told to Mrs. King, Karen returned to Wisconsin by using an airplane ticket sent to her by her mother. Policewoman Carter testified that she had talked to Karen about this incident upon her return to Wisconsin, when Karen was in the hospital for certain bladder and kidney ailments. Both Mrs. Williams and Karen were present at this hearing, but neither the court nor the parties had them testify.

Mrs. King then recommended incarceration at Waupun, and the trial court sentenced Rosado to fourteen years' imprisonment. When the defense counsel claimed total surprise in regard to this Puerto Rican incident, the trial court recessed the hearing, then returned to vacate the sentence it had just imposed, and to schedule further proceedings for December 17, 1973.

On December 17, 1973, another hearing was held. Karen Williams, although present, did not testify. Mrs.

Williams took the stand to state that Karen had been gone from Christmas Day, 1972, to Mother's Day, 1973. On March 4, 1973, Mrs. Williams received a postcard from Karen from O'Hare Airport in Chicago, and did not hear from her again until she telephoned from Puerto Rico in May of 1973. Mrs. Williams testified that Mrs. King and Policewoman Carter had testified accurately, as far as she knew, about the Puerto Rican incident. She also stated that Rosado had come to her after he returned to Wisconsin and offered to pay for Karen's way back if Mrs. Williams would agree not to press charges. After several character witnesses testified in Rosado's favor, the district attorney reiterated that he had not known of the Puerto Rican incident when he entered into the plea agreement, but still felt bound by this agreement to a probation recommendation. Mrs. King recommended an extensive period of incarceration, and the trial court again imposed a fourteen-year sentence.

Postconviction motions to reduce sentence and to vacate the guilty plea and sentence were heard on April 14, 1974. At the hearing counsel for Rosado claimed the existence of new factors relative to sentencing. These new factors were, according to counsel, Rosado's explanation of the Puerto Rican incident, which he had never given. The court refused to hear Rosado, and denied both motions by an order entered August 11, 1974.

Rosado raises objections to the trial court's procedures in imposing the fourteen-year sentence and also to the procedures followed in denying his postconviction motions. None of these complaints has any merit.

The defendant claims that the trial court violated sec. 972.15 (1), Stats., by receiving and considering the presentence report before accepting his guilty plea. This statute provides that the court may order a presentence investigation "after conviction." Here, the trial court ordered and considered a presentence report after it had

completed a careful inquiry into the propriety of the defendant's guilty plea, but before it had formally accepted that plea. While this is a literal violation of sec. 972.15 (1), it was at most a harmless error which in no way prejudiced the right of the defendant to a fair sentencing procedure. The rule that presentence reports should be considered only after conviction is designed to prevent possibly prejudicial information from coming to the attention of the judge when he is still either considering the guilt or innocence of the defendant in a trial to the court, or supervising a jury trial.[1] This type of prejudice obviously cannot arise in the context of a guilty plea. In fact, the Federal Rules of Criminal Procedure allow the trial court to consider a presentence report before accepting a guilty plea, usually in order to decide whether or not to follow a plea-bargain arrangement between the prosecutor and the defense.[2] While the Wisconsin statute does not permit this practice, the consideration of the presentence report before formal acceptance of a guilty plea is not inherently prejudicial to the defendant. This is especially so in this case, where the trial court had on November 14th carefully assured itself of the voluntariness of the plea, and the factual basis for the crime, before it even ordered the presentence report. Acceptance of the plea on December 14th was a mere formality, and reception of the presentence report before that date did not prejudice the defendant.

The defendant next complains that the trial court violated sec. 972.15 (2), Stats., by receiving from Mrs. Williams information relative to sentencing and from Mrs. King an alleged oral presentence report, without

---

[1] *Gregg v. United States* (1969), 394 U. S. 489, 492, 89 Sup. Ct. 1134, 22 L. Ed. 2d 442.

[2] *See:* 18 USCA, Fed. Rules Crim. Procedure, Rule 32 (c) (1), which provides that a presentence report shall not be submitted to the trial court "unless the defendant has pleaded guilty . . . ."

disclosing any of this information to defendant's attorney prior to the December 14th sentencing hearing. This statute requires that the judge shall disclose the contents of "a presentence investigation report" to defense counsel when it is received. In *Waddell v. State*,[3] this court also decided that a trial court should reveal to the defendant the nature of information provided it by interested third parties. Assuming *arguendo* that the language of the statute includes an oral report such as the one allegedly given by Mrs. King, and that *Waddell* covers information provided by Mrs. Williams, it still does not follow that failure to disclose immediately this information prejudiced the rights of the defendant so as to amount to a denial of due process. In this case the information provided by Mrs. King and Mrs. Williams related to the Puerto Rican affair. After it became apparent at the December 14th hearing that the introduction of this evidence had surprised defense counsel, the trial court vacated the sentence, and ordered a three-day continuance until December 17th, thus affording defense counsel ample opportunity to respond to and rebut this evidence. Thus, the December 14th hearing had the effect of disclosing to the defendant that the trial court had received information about the Puerto Rican affair and that it considered such information highly relevant to sentencing. The fact that defendant chose not to challenge or counter this information at the December 17th meeting does not change the fact that he had fair notice and opportunity to do so. Although this action of the trial court cured its previous failure to disclose information relevant to sentencing, the better practice is to disclose this information within a reasonable time after it is received, and in advance of any sentencing hearing.

Finally, the defendant argues that the evidence received concerning the Puerto Rican affair was either

---

[3] (1964), 24 Wis. 2d 364, 369, 129 N. W. 2d 201.

inadmissible or so unreliable as to be unworthy of consideration by the sentencing judge. On the contrary, this evidence was properly admitted and considered, although the trial judge should discount the value of this type of evidence, which was for the most part multiple and uncorroborated hearsay.

It is well settled that all information relevant to sentencing should be brought to the attention of the trial judge.[4] This includes evidence of a pattern of behavior, since such a pattern is an index of character, and character is highly relevant to sentencing.[5]

At the postconviction hearing, defendant's appointed counsel orally moved to amend prior counsel's motion to reduce sentence in order to allege the existence of a "new factor" regarding which the defendant desired to testify. The trial court correctly denied defendant's counsel's motion to reduce the fourteen-year sentence based on the contention of defendant that a new factor was to be considered, to wit, the defendant's version of the Puerto Rican affair, about which he had never testified.

Defendant's explanation of the Puerto Rican incident was not a "new factor" at all. As used in *Kutchera v. State*,[6] and *State v. Foellmi*,[7] the phrase "new factor" refers to a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties. In this case, defendant was available to give his explanation of the Puerto Rican affair at the December 17th meeting, and his counsel was fully aware at

---

[4] *Lange v. State* (1972), 54 Wis. 2d 569, 574, 196 N. W. 2d 680; *Neely v. State* (1970), 47 Wis. 2d 330, 333–335, 177 N. W. 2d 79.

[5] *Deja v. State* (1969), 43 Wis. 2d 488, 493, 168 N. W. 2d 856; *Waddell v. State, supra*, footnote 3, at page 368.

[6] (1975), 69 Wis. 2d 534, 553, 230 N. W. 2d 750.

[7] (1973), 57 Wis. 2d 572, 581, 205 N. W. 2d 144.

that time that the trial court considered this incident relevant to sentencing. This failure to testify at this time can only be interpreted as a conscious tactical choice. Simply because this knowing failure to testify deprived the trial court of defendant's story does not transform this side of the story into a "new factor" at the postconviction hearing four months later. The same reasoning leads us to conclude that there was no error in the trial court's denial of defendant's request to give testimony on this so-called "new factor" at the postconviction hearing.

This court will review a sentence imposed by a trial court "to determine whether an abuse of discretion clearly appears."[8] In so doing, we adhere to a "strong policy against interference"[9] with the trial court's choice of sentence and a "presumption that the trial court acted reasonably."[10] In reviewing the trial court's sentencing action we look to the reasons given by the trial court in imposing sentence.[11] At the end of the hearing on December 17, 1973, just before imposing sentence, the court stated:

"Mr. Rosado, you are not only immoral, you are amoral. In almost 20 years of contact with criminal activity on either that side of the bench or on this side of the bench, I have rarely encountered either as a prosecutor or a jurist an individual with such a callous disregard for morality.

"I shall give you all the credit which I believe you have coming, and that is a small element of credit for the only honest thing which I think you did here, and that was to enter a plea of guilty—and it will be a small portion, because on the basis of everything that I have heard here on the issue of disposition—and I think it is material because it is the court's obligation to dispose of matters in a manner in which the court considers most fitting

[8] *State v. Tuttle* (1963), 21 Wis. 2d 147, 151, 124 N. W. 2d 9.
[9] *Id.* at page 150.
[10] *Jung v. State* (1966), 32 Wis. 2d 541, 548, 145 N. W. 2d 684.
[11] *McCleary v. State* (1971), 49 Wis. 2d 263, 182 N. W. 2d 512.

and proper—it is my view that you are in need, for your own welfare and for the welfare of this community, a very long period of living in a highly structured environment."

It is obvious that this is not the careful and considered "process of reasoning" from record facts required by *McCleary*.[12] At no point during the December 14th or the December 17th hearing did the trial court explicitly explain why it had concluded that the sentence of fourteen years should be imposed upon this defendant.

The trial court also misused its discretion in directly punishing the defendant for the Puerto Rican affair. The only crime which occurred in Wisconsin was the act of intercourse in a Milwaukee hotel, and this was the only offense for which the trial court could directly punish this defendant. To punish the defendant for incidents occurring in Puerto Rico is beyond the power of a Wisconsin trial court, no matter how horrible the trial court may have considered these incidents.

Evidence about the Puerto Rican incidents was relative to the question of the defendant's character, and so was admissible at the sentencing hearing. However, it is one thing to consider this trip as one factor relevant to deciding the appropriate sentence for the crime of which the defendant was convicted, and quite a different thing to regard the Puerto Rican affair as a separate crime or series of crimes for which the defendant is punishable by a Wisconsin court. Yet the only reasonable inference one can make from the record is that the defendant was sentenced, not only for the crime of which he was convicted, but for the events which occurred in Puerto Rico. The record of the December 14th and the December 17th hearings was largely taken up with this Puerto Rican incident. Very little was said about the crime charged. When the trial court first pronounced sentence on December 14th, it said it was sentencing the defendant for his

[12] *Id.* at page 277.

"course of conduct," which can only refer to the Puerto Rican affair, as well as the single event which occurred in Milwaukee. Likewise, when the sentence was pronounced the second time on December 17th, the court stated that it was sentencing Rosado "on the basis of everything that I have heard here," and yet all that the court had heard on December 17th was about the Puerto Rican incident, and not about the act of intercourse in Milwaukee, which was the only act for which defendant could be directly punished by a Wisconsin court.

*McCleary* specifies three factors which should be considered by the trial court in imposing sentence. These are the gravity of the offense, the character of the offender, and the need for protection of the public.[13] Of course, the crime involved here is most serious, and there is obviously a need for "protection of the public" against those who would commit this offense.[14] But here the facts clearly established that the relationship between the defendant and Karen Williams was entirely voluntary and was acquiesced in by Karen's mother. The fact that this was the first offense committed by Rosado and that he had a good employment record is conceded.

We conclude that the trial court based its exercise of sentencing discretion upon a clearly improper factor, the alleged offenses in Puerto Rico, treating the alleged Puerto Rico offenses as separate crimes, and we conclude that the sentencing judgment, although affirmed, must be modified to provide for a sentence of an indeterminate term of not more than seven years, to commence on December 17, 1973, the date of the original sentencing.

*By the Court.*—Judgment modified to provide for a sentence of an indeterminate term of not more than seven years, to commence on December 17, 1973, and as modified, affirmed; orders affirmed.

---

[13] *Id.* at pages 274–276.

[14] *State v. Schilz* (1971), 50 Wis. 2d 395, 184 N. W. 2d 134; *Bastian v. State* (1972), 54 Wis. 2d 240, 194 N. W. 2d 687.