PER CURIAM.
¶1 Christopher Dion Woodley appeals a judgment of conviction following a jury trial and an order denying Woodley's postconviction motion.[1] Woodley contends that: (1) he is entitled to a new trial based on newly discovered evidence in the form of a statement by Woodley's codefendant, Donovan Jones, which Woodley claims would have supported Woodley's defense at trial; (2) he is entitled to a new trial based on ineffective assistance of counsel by failing to call Jones as a witness at Woodley's trial; and (3) he is entitled to sentence modification based on the new factor of Woodley's history of drug use, which Woodley claims would have supported his eligibility for the Substance Abuse Program (SAP). For the reasons set forth below, we reject these contentions, and affirm.
BACKGROUND
¶2 In 2013, Woodley was charged with possession of a firearm by a felon, possession of cocaine with intent to deliver, and keeping a drug house. The charges stemmed from a Milwaukee Police Department drug investigation focusing on Woodley and several others, during which police gathered information from a confidential informant and executed a search warrant at a house on Wright Street in Milwaukee. Woodley went to trial on the charges.
¶3 At trial, the State presented the following evidence. Police testified that a search warrant was executed at the Wright Street house, uncovering a Cobray MAC-11 firearm in the upstairs north bedroom, cocaine and marijuana hidden in a couch in the living room, as well as plastic baggies and walkie-talkies. Woodley and Jones were present at the house during the search of the Wright Street house, and police found $ 1,450 in small denominations in Woodley's pockets. Police were able to obtain a palm print from the MAC-11, which matched Jones.
¶4 Trina Jenkins testified that she was also present at the Wright Street house during the search. Jenkins went to the house with Woodley and a man named Malik, because Malik had promised Jenkins that Woodley would sell Jenkins crack cocaine. When they arrived at the house, a man and a woman were sitting in the kitchen smoking crack cocaine. Jenkins went into another room and sat on a couch, and Woodley removed a gun from the couch and brought it upstairs. Woodley brought down crack cocaine for Jenkins to purchase. The police then arrived, and Woodley hid the cocaine in a couch in a different room.
¶5 Jenkins testified that, at the time of Woodley's trial, Jenkins had pending charges of bail jumping and possession of marijuana. Jenkins had entered a plea deal on those charges in which Jenkins agreed to plead guilty to possessing marijuana and to testify against Woodley, in exchange for the State agreeing to bail modification to a personal recognizance bond, recommending a time-served sentence, dismissing the bail jumping charge, and agreeing not to issue additional potential charges.
¶6 Robert Johnson[2] testified that he had known Woodley for sixteen years, and, around the time of the search, knew him to sell cocaine, Percocet, and ecstasy. Robert was involved in selling drugs at that time as well. Robert knew the Wright Street house to be Woodley's and that Woodley paid the rent for the house and furnished it. Robert had been to the house multiple times, and described it as a drug house, meaning a place people could go to buy drugs. Woodley allowed Donovan Jones to live at the house, and Jones's role was to generate drug customers for the house and to sell drugs provided by Woodley. Robert saw Woodley possess several firearms inside the house, including a MAC-11. Robert also saw Woodley sell drugs inside the house.
¶7 Robert also testified that, at the time of Woodley's trial, he had pending charges for possession of a firearm by a felon and possession of narcotic drugs, and that he hoped for leniency from the State in exchange for his testimony.
¶8 Deandrew Hunter testified that, for about a month prior to the search of the Wright Street house, Hunter was living at the house along with Jones and was selling drugs supplied by Woodley. Hunter knew the house to be Woodley's, and also knew that Jones was selling drugs for Woodley. Hunter witnessed Woodley provide drugs to Jones and witnessed Jones sell the drugs at the Wright Street house on multiple occasions. Hunter identified the upstairs north bedroom as Woodley's. Hunter had also seen Woodley in possession of a MAC-11 firearm at the house.
¶9 Hunter testified that he had a pending charge for delivery of cocaine at the time of his testimony, and that while no promises had been made to him by the State in exchange for his testimony against Woodley, he was hoping for the best.
¶10 Reginald Johnson testified that he earned about $ 3,300 working as a confidential informant for the police in connection with the drug investigation in this case. Reginald knew that Woodley was selling pills and cocaine at that time, and saw Woodley sell cocaine at the Wright Street house. Woodley had asked Reginald to help Woodley set up the Wright Street house as a drug house, and to oversee Jones and Hunter selling drugs for Woodley. Reginald identified Woodley's voice on a recording from a wiretap that Reginald wore during a conversation with Woodley, which was played for the jury. Reginald explained that Woodley was discussing his rent payments and plans for drug dealing at the Wright Street house. Reginald had also seen Woodley in possession of firearms, including a MAC-11.
¶11 The defense did not present any evidence, but argued that the State's evidence was insufficient to prove Woodley's guilt. The jury found Woodley guilty of all three charges.
¶12 The circuit court sentenced Woodley to seven years of initial confinement and six and one-half years of extended supervision. Woodley requested that the court make him eligible for SAP. Defense counsel stated that Woodley had a history of drug use, and that Woodley was in need of the various components of the SAP programming. The State opposed program eligibility, arguing that Woodley had not tested positive for drug use during two years on Justice Point supervision. The State argued that the evidence showed that Woodley was a drug seller but not a drug user, and that SAP was not appropriate. Defense counsel countered that Woodley's prior criminal record showed that he was using drugs. The State then posited that Woodley had no prior conviction for possession for personal use. The court stated to the defense that if there was anything else, now was the time to discuss it. The defense did not point to any prior conviction of Woodley's showing that Woodley had a history of drug use. The court found Woodley ineligible for SAP, explaining that its decision was "minimally, because ... to make [Woodley] eligible for [SAP] would unduly depreciate the severity of these offenses." However, the court ordered Woodley to undergo an AODA assessment and to comply with any follow-up care and treatment.
¶13 Woodley filed a postconviction motion seeking a new trial based on newly discovered evidence, in the form of an affidavit by Jones stating that: (1) neither Jones nor Woodley controlled the Wright Street house; (2) Woodley did not provide Jones with drugs and Woodley did not sell drugs at the Wright Street house; (3) Jenkins brought the cocaine to the house on the day of the search; and (4) Jones owned the MAC-11 firearm and never saw Woodley handle the MAC-11, and the MAC-11 never left Jones's possession until Jones hid it when the police arrived at the Wright Street house. Woodley also sought a new trial based on the ineffective assistance of his trial counsel for failing to call Jones as a witness at Woodley's trial. Finally, Woodley argued that he was entitled to sentence modification to make him eligible for SAP based on the new factor of Woodley's history of drug possession for personal use. The circuit court denied Woodley's claims for postconviction relief without a hearing. Woodley appeals.
DISCUSSION
¶14 Woodley argues first that Jones's affidavit is newly discovered evidence warranting a new trial. A defendant seeking a new trial on the basis of newly discovered evidence must show by clear and convincing evidence that: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." State v. Avery , 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60 (quoted sources and internal quotation marks omitted). If the defendant makes that showing, "then 'the circuit court must determine whether a reasonable probability exists that a different result would be reached in a trial.' " Id. (quoted source omitted). Whether to grant or deny a motion for a new trial based on newly discovered evidence is a matter within the circuit court's discretion. State v. Plude , 2008 WI 58, ¶31, 310 Wis. 2d 28, 750 N.W.2d 42. However, whether there is a reasonable probability that a different result would be reached at a new trial is a question of law that we decide independently. See id. , ¶33. Whether there is a reasonable probability of a different result at a new trial is a question of "whether a jury would find that the newly-discovered evidence had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the defendant's guilt." Id.
¶15 Woodley contends that Jones's affidavit meets all of the criteria for newly discovered evidence. Woodley asserts that: (1) he discovered the evidence after his conviction; (2) he was not negligent in seeking the evidence, because he did not know that Jones had information other than the statements Jones gave to police following his arrest that he had been asleep prior to police arriving and that he had no knowledge of the firearm in the house; (3) Jones's assertions were material to the question of Woodley's guilt; and (4) the evidence was not cumulative because Woodley presented no evidence at trial and Jones would have testified contrary to the State's witnesses.
¶16 Woodley then contends that there is a reasonable probability of a different result as to the cocaine and firearm charges at trial because, he asserts, Jones's testimony would have contradicted Jenkins's testimony that Woodley possessed the MAC-11 firearm and the cocaine prior to the arrival of the police at the Wright Street house. He argues that Jenkins was the only witness who testified that Woodley possessed the cocaine and firearm on the day of the search, and that Jones would have contradicted that testimony. Woodley asserts that, while Jones's credibility would have been called into question by his prior convictions and contradictory earlier statements to police, Jenkins's credibility was also put into question by her prior convictions and the favorable plea deal she received in exchange for her testimony. Woodley points out that Jones's original self-serving statements to police were not believable because Jones's palm print was found on the MAC-11 firearm, while Jones's affidavit implicates himself in criminal conduct. He argues that there is a reasonable probability that the jury would have believed Jones over Jenkins.
¶17 The State responds that Jones's affidavit does not meet the criteria for newly discovered evidence, asserting that Woodley has not shown that he was not negligent in seeking information from Jones or that Jones's assertions are material to the case. The State also asserts that, in light of the other evidence presented at trial, there is not a reasonable probability of a different result with Jones's testimony.
¶18 We conclude that, assuming that Jones's affidavit constitutes newly discovered evidence, there is not a reasonable probability that a jury presented with Jones's testimony and the evidence presented at trial would have a reasonable doubt as to Woodley's guilt.[3] As set forth above, at trial, multiple witnesses testified that Woodley paid the rent for and controlled the Wright Street house; that Woodley was selling drugs, including cocaine, out of the Wright Street house, as well as providing drugs for others to sell at that location; and that Woodley possessed a MAC-11 firearm, including that Woodley possessed the firearm inside the Wright Street house. Additionally, police testified that the search of the Wright Street house uncovered cocaine and marijuana on the main floor, and a MAC-11 firearm in the room identified as Woodley's, and that Woodley was present in the house at that time, with $ 1,450 cash in small denominations on his person. The jury also heard Woodley's statements on the wire recording along with Reginald's explanation that Woodley was referring to Woodley's rent for the Wright Street house and his plans for drug dealing there. Thus, the State presented strong evidence at trial that Woodley possessed the MAC-11 firearm and that Woodley possessed the cocaine with intent to deliver it. Taking into consideration the States' witnesses' motivations to testify against Woodley, the State still presented strong and consistent evidence as to Woodley's drug activities and possession of the firearm, supported by the evidence recovered during the search of the Wright Street house. While Jones would have contradicted some of that information, Jones's statements also would have contradicted his own statements to police upon his arrest. Thus, Jones's claims to his possession of the firearm, that he witnessed Jenkins bring the cocaine to the Wright Street house, and his disavowals as to any drug sales by Woodley would not have provided a reasonable probability that the jury would have had a reasonable doubt as to Woodley's guilt.
¶19 Woodley next contends that his trial counsel was ineffective by failing to investigate and call Jones as a witness at trial. A claim of ineffective assistance of counsel "must show that counsel's performance was deficient [in that] counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington , 466 U.S. 668, 687 (1984). It must also show that "the deficient performance prejudiced the defense," that is, that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. Woodley has not made that showing here.
¶20 Woodley argues that his counsel performed deficiently by failing to interview Jones and call Jones as a witness at trial. He contends that his counsel failed to present any evidence to rebut Jenkins's testimony that Woodley possessed the firearm and the cocaine prior to the police arrival at the Wright Street house. He argues that, had counsel called Jones as a witness, the jury would have heard evidence that Jenkins was the one who brought the cocaine to the house, discrediting her testimony. He also points out that the jury would have heard Jones take responsibility for hiding the firearm when the police arrived, contrary to Jenkins's testimony. Woodley asserts that he alleged sufficient facts to entitle him to a hearing on his claim of ineffective assistance of counsel. See State v. Allen , 2004 WI 106, ¶24, 274 Wis. 2d 568, 682 N.W.2d 433.
¶21 The State responds that Woodley has not established that he was prejudiced by his counsel's failure to call Jones as a witness at trial. The State argues again that the evidence against Woodley was strong, and that there is not a reasonable probability of a different result had Jones testified at Woodley's trial.
¶22 We conclude that Woodley was not prejudiced by any deficiency by his counsel failing to call Jones as a witness at trial. For the reasons set forth above, there is not a reasonable probability that the result at trial would have been different had counsel called Jones as a witness. Accordingly, Woodley's argument fails on the prejudice prong. See State v. Swinson , 2003 WI App 45, ¶58, 261 Wis. 2d 633, 660 N.W.2d 12 ("We need not address both components of the [ineffective assistance of counsel] test if the defendant fails to make a sufficient showing on one of them.").
¶23 Lastly, Woodley contends that he is entitled to sentence modification making him eligible for SAP based on the new factor of Woodley's criminal history of drug possession for personal use. A motion for sentence modification must demonstrate the existence of a new factor and that the new factor justifies sentence modification. State v. Harbor , 2011 WI 28, ¶¶36-37, 333 Wis. 2d 53, 797 N.W.2d 828. A "new factor" for sentence modification purposes is a fact or set of facts that is highly relevant to the imposition of sentence, but not known to the sentencing judge, either because it was not then in existence or because it was unknowingly overlooked by all of the parties. Rosado v. State , 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). If a defendant establishes the existence of a new factor, the circuit court must then determine whether the new factor justifies sentence modification. Harbor , 333 Wis. 2d 53, ¶37. Whether the defendant has established the existence of a new factor is a question of law that we review de novo. Id. , ¶33. Whether the new factor warrants sentence modification is a matter left to the circuit court's discretion. Id. , ¶37.
¶24 Woodley contends that his history of drug abuse was overlooked at sentencing, and that it was highly relevant to his eligibility for SAP. Woodley points out that his trial counsel failed to provide the sentencing court with any specific information about his drug use, and failed to correct the State's assertion that Woodley had no prior convictions for drug possession for personal use. Woodley asserts that he has prior convictions for possession of marijuana and cocaine, which were not presented to the circuit court when the court made its determination that Woodley was not eligible for SAP. Woodley argues that the court's questioning the parties as to Woodley's history of drug use showed that Woodley's drug use was highly relevant to the court's determination as to SAP eligibility. Woodley also argues that the postconviction court erred by denying sentence modification on grounds that the full term of initial confinement was necessary to achieve the sentencing goals of punishment and deterrence. Woodley points out that the sentencing court found Woodley ineligible for SAP "minimally" because program eligibility would unduly depreciate the seriousness of the offenses. Woodley interprets the sentencing court's use of the word "minimally" as indicating that the seriousness of the offenses was not the primary reason the court found Woodley ineligible for SAP.[4] Woodley contends that the sentencing court's primary reason for finding him ineligible for SAP was that the court was unaware of Woodley's drug history. He contends that, had the court been aware of that drug history, it would have found him eligible for SAP.
¶25 The State responds that the circuit court properly exercised its discretion to deny sentence modification by explaining that, even if Woodley established a new factor, the court determined that sentence modification was not warranted. The State points out that the court determined that the full amount of initial confinement imposed at sentencing was necessary to punish and deter Woodley based on the seriousness of the offenses.
¶26 We conclude that, assuming that Woodley's asserted history of drug possession for personal use constitutes a new factor, the postconviction court properly exercised its discretion by determining that the new factor did not warrant sentence modification. The postconviction court determined that Woodley's history of drug possession for personal use did not warrant sentence modification because the full amount of initial confinement imposed by the sentencing court was necessary to not unduly depreciate the seriousness of the offenses. The court explained that, assuming that Woodley had presented a new factor, the court declined to modify Woodley's sentence to find him eligible for SAP because the court found that the full sentence imposed was necessary to punish and deter Woodley. The court therefore properly exercised its discretion to deny sentence modification even if Woodley presented a new factor. See State v. Hegwood , 113 Wis. 2d 544, 546, 335 N.W.2d 399 (1983) ("The existence of a new factor does not ... automatically entitle the defendant to relief. Whether the new factor warrants a modification of sentence rests within the trial court's discretion.").
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

The Honorable William W. Brash, III, presided over trial and sentencing. The Honorable Michelle Ackerman Havas presided over postconviction proceedings.

Because two of the State's witnesses share the surname Johnson, we refer to those witnesses by their first names.

The State also asserts that Jones's affidavit is a recantation of his earlier statements, and thus corroboration of the new evidence was required. See State v. McCallum , 208 Wis. 2d 463, 473-74, 561 N.W.2d 707 (1997) (when newly discovered evidence is a witness's recantation, it must be corroborated by other newly discovered evidence because recantations are inherently suspect). In reply, Woodley argues that the corroboration rule does not apply because Jones did not testify at trial. Because we conclude that there is not a reasonable probability of a different result at a new trial, we do not reach this dispute.

Our reading of the sentencing transcript indicates that the circuit court meant "minimally" as "at a minimum," because the only reason the court gave for denying Woodley SAP eligibility was that it would unduly depreciate the seriousness of the offenses. That is, the court did not state that it was "minimally" relying on the seriousness of the offenses and "primarily" relying on any other factor, such as Woodley's lack of AODA issues. In fact, the court did not find that Woodley had no AODA issues following the parties' discussion of that topic. The court stated that it found Woodley ineligible based on the seriousness of the offenses, and also stated its belief "that there may be other issues as well that may-not saying will automatically-but may disqualify you for participation in one or either of those programs." Notably, the court also ordered Woodley to undergo an AODA assessment as part of his sentence. Regardless, as set forth in the text, the postconviction court properly exercised its discretion to deny sentence modification by determining that sentence modification was not warranted.