# COURT OF APPEALS
## DECISION
## DATED AND FILED

## April 27, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.   2019AP2264-CR** | Cir. Ct. No. 2007CF4341 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS**<br>**DISTRICT I** |

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

ADAMM LINTON,

      DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN, Judge. *Affirmed*.

Before Dugan, Graham and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Adamm Linton appeals the circuit court's denial of his motion requesting sentence modification on the basis that *Miller v. Alabama*, 567 U.S. 460 (2012), represents a change in the law applicable to sentencing juveniles and is a new factor entitling him to sentence modification.  We conclude that the specific holding of *Miller* is inapplicable here.  Furthermore, we conclude that the "children are different" principle that Linton argues was announced and applied in *Miller* is not a new principle for the circuit court to consider when sentencing juveniles.  Therefore, *Miller* is not a new factor entitling Linton to sentence modification, and we affirm the postconviction court's denial of Linton's motion.[1]

## BACKGROUND

¶2     In September 2007, when Linton was seventeen years old, he was criminally charged, in two separate cases, with felony murder as a party to the crime for the deaths of F.C. and J.E.   The cases were consolidated for trial. Following a five-day jury trial, the jury found Linton guilty on June 13, 2008, of one count of felony murder as a party to a crime for the death of F.C. and one count of first-degree reckless homicide as a party to a crime for the death of J.E. Linton was subsequently sentenced to a total of sixty years of imprisonment, composed of forty-five years of initial confinement and fifteen years of extended

---

[1] The Honorable M. Joseph Donald presided over the trial and the sentencing hearing. The Honorable Stephanie Rothstein issued the decision and order addressing Linton's postconviction motion for sentence modification that is the subject of this appeal.  We refer to Judge Donald as the trial court and Judge Rothstein as the postconviction court.

supervision. Linton filed a direct appeal of his convictions, and we affirmed in a published opinion.[2]

¶3    At the sentencing hearing, the prosecutor argued that, despite Linton's young age of seventeen, Linton should receive a substantial sentence because of the nature of the criminal acts involved. As the prosecutor argued, Linton had a hand in the death of two innocent men in the span of less than a week. As to J.E.'s death, the prosecutor argued that the evidence at trial showed that Linton and one of his friends randomly approached J.E. and on an impulse, demanded J.E.'s car keys. Linton then shot J.E. when J.E. refused to comply with Linton's demand. As to F.C.'s death, the prosecutor argued that the evidence at trial showed that Linton, along with two other of his friends, broke into an apartment to steal a pair of tennis shoes, found F.C. sleeping, and bludgeoned F.C. to death. In support of his sentence recommendation, the prosecutor further said that when he read the presentence report, what stood out were some of Linton's statements about who he was. The prosecutor noted that "[i]n his explanation of his record, [Linton] said it's not serious. I'm only 17. What do you expect. It was just a mistake that they blew out of proportion."

¶4    Trial counsel, on the other hand, argued that Linton's age should be considered a mitigating factor because Linton's conduct demonstrated "immaturity and childish rationalization," instead of that of a "hardened street criminal." Specifically in regards to the death of F.C., trial counsel stated:  "I can't distinguish between [Linton's co-actor] and Mr. Linton as I try to be objective. I

---

[2] ***State v. Linton***, 2010 WI App 129, 329 Wis. 2d 687, 791 N.W.2d 222.

see them as both pretty much in the same position in terms of culpability, and that the difference perhaps should be Mr. Linton's age and his record."

¶5     The trial court likewise expressly addressed Linton's age when it imposed Linton's sentence.  The trial court stated:

> I'm somewhat like the attorneys, at a loss in trying to understand exactly how it is that an individual at the age of 17 could find themselves before a court where they're looking at, in essence, over 90 years of imprisonment, having been involved in homicides of two individuals within a span of a week.

¶6     The trial court further stated:

> [T]he only thing that sort of comes to mind is a general sense of a loss of empathy.  It appears, Mr. Linton, that either based on your age or based on some sort of character flaw or defect, that you appear to be a young man who only cares about what you can take.  Whether it is property or money or even in this case, 1ives.  It appears, Mr. Linton, that if you do not get what you want, you become very indignant and upset and impulsive.

The trial court concluded by saying that Linton was "a wild and out of control young man and just out living life."

¶7     In addition to Linton's age, the trial court also considered the nature of the offenses, the impact of Linton's conduct on the victims and their families, the fact that the support Linton received from his mother "wasn't enough," Linton's record, and Linton's character as an "impulsive young man."   On balance, the trial court found the imposition of a sentence of sixty years of imprisonment appropriate in large part because of the seriousness of the offenses.

¶8     Linton filed a motion for sentence modification on August 27, 2019, alleging that the United States Supreme Court's decision in *Miller v. Alabama*

presented a new factor. The postconviction court denied his motion, and Linton appealed.

## DISCUSSION

¶9 A court "may base a sentence modification upon the defendant's showing of a 'new factor.'" *State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. "The defendant bears the burden of demonstrating by clear and convincing evidence that a new factor exists." *State v. Ninham*, 2011 WI 33, ¶89, 333 Wis. 2d 335, 797 N.W.2d 451. "Whether a fact or set of facts presented by the defendant constitutes a 'new factor' is a question of law." *Harbor*, 333 Wis. 2d 53, ¶33. "[I]f a court determines that the facts do not constitute a new factor as a matter of law, 'it need go no further in its analysis' to decide the defendant's motion." *Id.*, ¶38 (citation omitted). "That is, it need not determine whether, in the exercise of its discretion, the sentence should be modified." *Id.* Thus, the threshold question we must address is whether a new factor exists.

¶10 A new factor

> refers to a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). "Therefore, any fact that was known to the court at the time of sentencing does not constitute a new factor." *Harbor*, 333 Wis. 2d 53, ¶57.

¶11 Linton argues that *Miller* is a new factor because it represents a change in the law on sentencing juveniles that took place after he was sentenced

and that is highly relevant to his case because Linton was seventeen at the time of the offenses.[3]  Linton describes *Miller* as a case announcing "the constitutional principle that children are different" and "plac[ing] a constitutional obligation on the sentencing judge to take into account how children are different, and consider the age and youth as a mitigating factor."  He contends that the principle behind *Miller*—that children are less culpable than adults—was not available as a principle for the trial court to consider at the time of his sentencing but must be considered now.

¶12     In short, we conclude that Linton has not met his burden to show that *Miller* is a new factor.  *See Harbor*, 333 Wis. 2d 53, ¶36 ("The defendant has the burden to demonstrate by clear and convincing evidence the existence of a new factor.").  The specific holding of *Miller* does not apply to Linton's case and the "children are different" principle that Linton refers to as underlying the Court's decision in *Miller* was in existence, known to the trial court, and considered at Linton's sentencing hearing.

¶13     In *Miller*, the Court addressed the constitutionality of applying a sentencing scheme that mandated life in prison without the possibility of parole for juveniles convicted of homicide.  *Id.*, 567 U.S. at 465.  The Court held that such a mandate was unconstitutional and that a sentencing court must take a juvenile's age into account before imposing a life sentence.  *Id.* at 479-80.  As support for

---

[3] Linton references that the trial court did not properly consider Linton's age as a mitigating factor and failed to consider Linton's diminished culpability as a seventeen year old. While worded as a possible challenge to the trial court's exercise of discretion at sentencing, Linton also states that he is not bringing such a challenge. We, thus, do not address any possible error in the trial court's exercise of discretion. Regardless, the time for challenging the trial court's exercise of discretion at sentencing has passed. *See State v. Nickel*, 2010 WI App 161, ¶¶5, 7, 330 Wis. 2d 750, 794 N.W.2d 765.

this holding, the Court pointed to its line of cases, including ***Roper v. Simmons***, 543 U.S. 551 (2005), and ***Graham v. Florida***, 560 U.S. 48 (2010), that "establish[ed] that children are constitutionally different from adults for purposes of sentencing." ***Miller***, 567 U.S. at 471. As the Court stated, "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." ***Id.*** at 472. Thus, the Court reasoned, the same penological justifications that support a sentencing scheme mandating a sentence of life in prison without the possibility of parole for adults does not apply in the same manner to juveniles, the result being that a sentencing court must have discretion over whether the individual circumstances warrant imposition of a sentence of life in prison without the possibility of parole for a juvenile.[4] ***Id.*** at 472-74.

¶14 We have previously addressed ***Miller***'s impact in Wisconsin in ***State v. Barbeau***, 2016 WI App 51, 370 Wis. 2d 736, 883 N.W.2d 520. There, we said, "[W]hat the United States Supreme Court in ***Miller*** found unconstitutional was a statutory scheme that mandates a punishment of life imprisonment without the possibility of parole for a juvenile convicted of intentional homicide." ***Id.***, ¶33. We further recognized that Wisconsin law "does not mandate life imprisonment without the possibility of release to extended supervision, but gives the circuit court the discretion to impose such a sentence if the circumstances warrant it."[5] ***Id.*** Thus, we concluded that ***Miller*** did not change the law in

---

[4] In ***Montgomery v. Louisiana***, 577 U.S. ___, 136 S. Ct. 718, 734 (2016), the Court held that ***Miller v. Alabama***, 567 U.S. 460 (2012), applied retroactively. Under the law as it exists in Wisconsin, the retroactive effect has no bearing on our conclusion.

[5] Wisconsin replaced its parole system with a system of initial confinement and extended supervision. *See* ***State v. Barbeau***, 2016 WI App 51, ¶16, 370 Wis. 2d 736, 883 N.W.2d 520. Thus, while ***Miller*** refers to parole, we use extended supervision.

Wisconsin because, under Wisconsin law, a circuit court was already required to exercise its discretion at the time of sentencing to determine the appropriate sentence for a juvenile in light of the juvenile's age and other relevant sentencing factors. *Id.*, ¶¶32-33, 41.

¶15    As an initial matter, then, *Miller*'s holding does not apply to Linton's case. *Miller* held that sentencing schemes mandating a sentence of life in prison without the possibility of parole were unconstitutional. As we recognized in *Barbeau*, we do not have such a sentencing mandate in Wisconsin and, thus, *Miller* did not effect a change in the law on sentencing juveniles in Wisconsin. *See Barbeau*, 370 Wis. 2d 736, ¶¶32-33. Moreover, as the postconviction court recognized, Linton did not actually receive a sentence of life in prison without the possibility of extended supervision. Linton received a sentence of forty-five years of initial confinement and fifteen years of extended supervision. At the time Linton was sentenced, he was nineteen years old. While this represents a significant amount of time, it is not a life sentence without the possibility of any release within Linton's life expectancy. Accordingly, *Miller*'s specific holding does not apply to Linton's case and cannot be considered a new factor warranting sentence modification for these reasons.

¶16    Moreover, the principle that "children are different" that underlies the Court's decision in *Miller* is not new to the law on sentencing juveniles in Wisconsin. In fact, it has been in existence for decades and this principle was specifically recognized by the State, trial counsel, and the trial court at Linton's sentencing hearing.

¶17    In rejecting a challenge similar to Linton's, our state supreme court addressed the constitutionality of sentencing a juvenile convicted of first-degree

intentional homicide to life in prison without parole and whether new studies about adolescent brain development constituted a new factor warranting sentence modification.[6] *Ninham*, 333 Wis. 2d 335, ¶¶2-3. The court held both that such a sentence was constitutional and that the studies were not a new factor. *Id.*, ¶¶4, 6. In reaching its decision, our supreme court pointed to the 1988 decision of *Thompson v. Oklahoma*, 487 U.S. 815, and recognized that the proposition that "less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult" has been "endorsed" by the Court "as of 1988." *Ninham*, 333 Wis. 2d 335, ¶¶60, 92. Thus, in rejecting the defendant's claimed new factor, the court said that "the conclusions reached by the studies were already in existence and well reported by the time [the defendant] was sentenced in 2000" and could not be considered a new factor. *Id.*, ¶91.

¶18      Similar to the studies in *Ninham*, while *Miller* itself was not in existence at the time of Linton's sentencing, the principle behind *Miller* that "children are different" was "already in existence and well reported by the time [Linton] was sentenced in [2008]." *See Ninham*, 333 Wis. 2d 335, ¶91. Indeed, the "children are different" principle from *Miller* to which Linton refers "only confirms the conclusions about juvenile offenders that the Supreme Court had 'already endorsed' as of 1988." *See Ninham*, 333 Wis. 2d 335, ¶92 (quoting *Thompson*, 487 U.S. at 835). Consequently, the "children are different" principle underlying *Miller* does not represent a new factor here.

---

[6] As the court in *Ninham* recognized, parole, as opposed to extended supervision, applied to the particular defendant because of the date of the offense, which occurred before the passage of Wisconsin's Truth in Sentencing legislation where Wisconsin's parole system was replaced with a system of extended supervision. *State v. Ninham*, 2011 WI 33, ¶42, 333 Wis. 2d 335, 797 N.W.2d 451.

9

¶19    In fact, *Miller* itself recognizes that the "children are different" principle has been in existence for quite some time. In reaching its holding, the Court repeatedly cited *Roper* and *Graham*, which were decided in 2005 and 2010, respectively, for support that juveniles are generally viewed as less culpable than adults because of their immaturity. *See Miller*, 567 U.S. at 479. With Linton having been sentenced in 2008, *Roper*, which announced that it is unconstitutional to apply the death penalty to juvenile offenders, *id.*, 543 U.S. at 575, was in existence and also available for instruction at the time of Linton's sentencing on this concept that children are different.

¶20    The record of Linton's sentencing hearing also recognizes this principle's existence because the parties and the trial court expressly considered Linton's age and the role it played in determining Linton's sentence. The State recognized that Linton was young but yet asked for a substantial sentence because of the underlying facts of the offenses. Trial counsel also pointed to Linton's age and requested that the trial court consider Linton as less culpable because of his age. Last, the trial court expressly stated that Linton was seventeen years old at the time of the offenses and considered Linton's young age as one of the possible explanations for why Linton found himself in his position. Nonetheless, after noting Linton's age, the trial court found that the nature of the offenses and Linton's character required a sentence of forty-five years of initial confinement followed by fifteen years of extended supervision. As a matter of law, then, Linton's status as a juvenile, and his corresponding diminished culpability recognized in cases such as *Miller* and *Ninham*, is not a new factor. *See Harbor*, 333 Wis. 2d 53, ¶58 (concluding that the defendant's mental health was not a new factor as a matter of law when the circuit court "addressed, discussed, and considered" the defendant's mental health on the record).

¶21    The goal is that "a judge must be able to make an 'individualized' sentencing determination, allowing for the consideration of the juvenile's age." *Barbeau*, 370 Wis. 2d 736, ¶41.    The trial court here made an individualized sentencing determination in which it recognized and considered Linton's age, as it was required to do under the law in Wisconsin both before and after *Miller*.    We, thus, reject Linton's arguments that he is entitled to sentence modification based on *Miller* as a new factor, and we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

11