# COURT OF APPEALS
## DECISION
## DATED AND FILED

## September 16, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP27-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2019CF513**

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

THOMAS M. PARKMAN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dane County: JILL KAROFSKY and CHRIS TAYLOR, Judges. *Affirmed*.

¶1 NASHOLD, J.[1] The issue in this appeal is whether the COVID-19 pandemic, as it may affect Thomas M. Parkman, is a "new factor" for purposes of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

modifying Parkman's sentence. *See **State v. Harbor***, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. Parkman pled guilty to three misdemeanor offenses stemming from his use of pepper spray against T.S., his ex-girlfriend and the mother of his child. On February 27, 2020—at least several weeks before the COVID-19 virus became a widely recognized public-health risk in Wisconsin— the circuit court sentenced Parkman to six months' incarceration in the Dane County Jail. The circuit court has since stayed Parkman's sentence multiple times, including pending this appeal, on acknowledgment of the dangers that the COVID-19 virus poses to inmates.

¶2      In September 2020, Parkman filed a postconviction motion, arguing that the combined circumstances of the COVID-19 pandemic and his "higher vulnerability to the disease" constituted a new factor warranting sentence modification. The circuit court denied the motion.[2] I affirm, concluding, as a matter of law, that Parkman has not demonstrated a "fact or set of facts highly relevant to the imposition of sentence." *See **Rosado v. State***, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975).

## BACKGROUND

¶3      The following facts and procedural history are undisputed for purposes of this appeal. On March 8, 2019, Parkman and T.S. had an argument at her residence. Parkman eventually became physical, pushing T.S. and punching her in the chest. The punch caused T.S. to fall against the closet, damaging her

---

[2] The Honorable Jill Karofsky presided at the plea and sentencing hearings and entered the judgment of conviction. The Honorable Chris Taylor entered the order on Parkman's motion for postconviction relief.

2

closet door and knocking her onto the ground. Parkman also sprayed T.S. "directly in the eyes" with pepper spray. T.S. called 911, and police arrested Parkman.

¶4 Parkman was charged with seven counts and, on January 14, 2020, pled guilty to three misdemeanor counts: intentional use of oleoresin device (pepper spray) causing bodily harm, criminal damage to property, and disorderly conduct. *See* WIS. STAT. §§ 941.26(4)(b), 943.01(1), 947.01(1). On February 27, 2020, the circuit court held the sentencing hearing. Neither the court nor the parties mentioned or appeared to take the COVID-19 virus into account, and the circuit court sentenced Parkman to six months' jail time, to begin April 24, 2020.[3]

¶5 In the following weeks, the incidence and prevalence of COVID-19 in Wisconsin increased dramatically. In recognition of this circumstance, on March 17, 2020, the circuit court, sua sponte, amended Parkman's jail report date to June 1, 2020. Thereafter, on Parkman's motions, the circuit court postponed Parkman's report date three more times. *See* WIS. STAT. § 973.15(8)(a)3. (authorizing the sentencing court to stay the execution of sentence for up to sixty days at a time).

¶6 On September 3, 2020, Parkman filed a postconviction motion to modify his sentence to probation, with his jail sentence stayed. *See* WIS. STAT. § 973.09(1)(a) (authorizing the sentencing court to stay the execution of sentence and place the defendant on probation). The stated basis for the motion was that

---

[3] The court imposed a six-month sentence for the offense of intentional use of oleoresin device causing bodily harm, a six-month sentence for the offense of criminal damage to property, and a ninety-day sentence for the offense of disorderly conduct, all running concurrently to each another.

3

"the COVID-19 pandemic and Mr. Parkman's higher vulnerability to the disease" represented a new factor warranting sentence modification. *See **Harbor***, 333 Wis. 2d 53, ¶¶35-37, 40 (a fact or set of facts "highly relevant" to the sentence but unknown at sentencing constitutes a new factor, on which basis the circuit court may exercise its discretion to modify the sentence (internal quotation marks and quoted source omitted)).

¶7 In his motion, Parkman argued that sentence modification was justified because of the "serious health emergency" and "unreasonable risk" he would face if incarcerated, given that he "has several underlying health issues that render him at higher risk for serious complications if he is exposed to the COVID-19 virus." Specifically, Parkman stated that he has asthma, has lung problems stemming from a 2018 car accident injury, and takes medications that negatively impact his immune system. Parkman represented that he was "obtaining documentation of his health conditions, which can be provided to the court." One month later, Parkman filed a letter from his primary care doctor, which states, in relevant part, "I am confirming [that] your current medication[s] … [are] Vyvanse for attention deficit disorder and Leflunomide for rheumatoid arthritis." Parkman did not submit any additional documentation discussing how these conditions or medications bore on his risk of COVID-19 complications, or confirming his self-reported asthma and lung problems.

¶8 On November 24, 2020, the circuit court again stayed Parkman's jail sentence pending its decision on his postconviction motion. On December 14, the court held the motion hearing. The parties and court agreed that the impact of the pandemic was a fact or circumstance "not known to the trial judge at the time of original sentencing, either because it was not then in existence or because … it was unknowingly overlooked by all of the parties." *See **Rosado***, 70 Wis. 2d at

288. Likewise, it was undisputed that there had been a recent outbreak of COVID-19 in the Dane County Jail and, more generally, that the inmate population was at greater risk of contracting the virus. The parties, however, disagreed about whether Parkman had established his own "higher risk for serious complications." The parties further disputed whether the COVID-19 pandemic and its particular risk to Parkman was a set of facts "highly relevant to the imposition of sentence." *See id.*

¶9    Parkman did not testify but, through counsel, argued that he has "some preexisting health conditions that … may make him more at risk of serious complications should he actually contract the COVID-19 disease." Parkman pointed to the letter from his doctor as establishing that "he is prescribed an immunosuppressant drug [Leflunomide] and is, therefore, immunocompromised." He represented that he also has asthma and lung problems, but does not take medications for those conditions. Parkman asserted that he was "not looking to continually push off this sentence"; he therefore requested a term of probation as an alternative to jail time.

¶10    The State asserted that Parkman had not established a new factor because he had presented insufficient proof of an elevated risk of COVID-19 complications. The State represented that, despite repeated requests for medical documentation of Parkman's various conditions, it received only a "two-sentence letter" stating that Parkman had rheumatoid arthritis and was taking Leflunomide.[4] The State further represented that it did "a quick Google search" on Leflunomide;

---

[4] As quoted above, the medical letter also states that Parkman takes Vyvanse for attention deficit disorder, but Parkman did not argue that this fact was relevant to sentence modification.

the State agreed that Leflunomide was an immunosuppressant but "couldn't find, either way, any clearer statement of whether someone with rheumatoid arthritis is at an elevated risk of coming down with COVID and experiencing significant issues." In the State's view, then, the unsubstantiated possibility Parkman was at elevated risk of COVID-19 complications had to be weighed against those factors relevant at sentencing, namely—as discussed below—the seriousness of the crime and Parkman's criminal history. The State did not oppose a continued stay of Parkman's jail sentence, stating, "We can certainly check in where we're at in three months or four months or whatever it is with the pandemic and determine what to do then." The State argued, however, that the "sentence that was originally imposed was appropriate."

¶11 The circuit court determined that, as a matter of law, the COVID-19 pandemic was not a new factor, because it was not "highly relevant" to Parkman's sentencing. *See id.* Accordingly, the court did not reach the question of whether sentence modification was warranted. *See* **Harbor**, 333 Wis. 2d 53, ¶38 (if the court determines, as a matter of law, that the facts do not constitute a new factor, then it need not consider whether it should exercise its discretion to modify the sentence). Parkman filed a notice of appeal, after which the circuit court stayed the imposition of jail time pending the resolution of this appeal.

**DISCUSSION**

¶12 "Within certain constraints, Wisconsin circuit courts have inherent authority to modify criminal sentences." *Id.*, ¶35. One avenue for doing so is for the defendant to demonstrate a new factor warranting sentence modification. *Id.* This is a two-part inquiry. *Id.*, ¶36. First, the defendant must show, by clear and convincing evidence, that a new factor exists. *Id.* As previously stated,

6

> the phrase "new factor" refers to a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*See Rosado*, 70 Wis. 2d at 288. Whether a proffered fact or set of facts constitutes a new factor is a question of law that this court decides de novo. *Harbor*, 333 Wis. 2d 53, ¶36.

¶13 The demonstration of a new factor does not automatically entitle the defendant to sentence modification. *Id.*, ¶37. Rather, if a new factor exists, the circuit court must make the discretionary decision to modify the sentence. *Id.* The court need not reach this second step if it determines that no new factor exists. *Id.*, ¶38.

¶14 It is undisputed that the impact of the COVID-19 pandemic was a fact unknown or not fully understood "at the time of original sentencing." *See Rosado*, 70 Wis. 2d at 288. That is, in the early days of the pandemic in February 2020, when Parkman was sentenced, there was little practical way that the circuit court could have meaningfully taken into account the risks that COVID-19 might pose to Wisconsin inmates.

¶15 Parkman, however, fails on the second prong of *Rosado*: he has not shown that the COVID-19 pandemic and his purported "higher vulnerability to the disease" would have been "highly relevant to the imposition of sentence." *See id.* As a threshold matter, I question whether Parkman has met his burden of showing, by clear and convincing evidence, that he has a "higher vulnerability to the disease." He failed to present any medical documentation confirming that he has asthma or lung problems. Even accepting Parkman's self-reported statement to

7

this effect, the record contains no information regarding the degree of risk COVID-19 poses to him. Similarly, a letter from Parkman's doctor states that he takes Leflunomide for rheumatoid arthritis, but nothing in the record indicates how this circumstance impacts Parkman's particular "vulnerability to the disease." Parkman bears the burden here, and without further documentation or testimony on his medical conditions, it is difficult to meaningfully assess his motion.

¶16    Even assuming, however, that Parkman has a higher risk of COVID-19 complications, Parkman has not demonstrated that the combined circumstances of his health status and the COVID-19 pandemic would have been "highly relevant" to the imposition of his sentence. It is important to note that Parkman does not seek another stay of the execution of his jail sentence—in fact, the State does not oppose postponing Parkman's jail report date "if necessary[,] until this pandemic subsides." Parkman, rather, seeks sentence modification—from six months' incarceration to probation with a stayed jail sentence. The question, then, is whether the COVID-19 pandemic and its particular risks to Parkman would have been "highly relevant" to the decision to sentence Parkman to *any term of incarceration*, to be served at some indeterminate point in the future.

¶17    I conclude that this set of facts is not "highly relevant" to the imposition of Parkman's sentence. Turning to the sentencing transcript, the circuit court explicitly considered the severity of the offense (intentional use of pepper spray against T.S.), Parkman's character, and the protection of the public. *See State v. Gallion*, 2004 WI 42, ¶¶40, 43-44 & n.11, 270 Wis. 2d 535, 678 N.W.2d 197 (discussing sentencing objectives and factors). First, the sentencing court was concerned by the nature of the crime itself, commenting, "I can't even image how bad it would hurt to get pepper-sprayed in the face." In the court's view, Parkman's use of pepper spray reflected his mindset that he could "act[] in a really

8

abusive and violent manner" so as to "control someone with violence." The offense was further "aggravated by the fact that [T.S.] was someone Mr. Parkman was or has been or is in a romantic relationship with … [and] they have a child together." Moreover, the pepper spray incident was, potentially, one of several recent crimes against T.S.: there were pending charges against Parkman involving T.S. "where he shows up at her house in one of them and … in another one … smashed out the window … of her car." Notably, although defense counsel requested a shorter jail term, counsel conceded that probation was "not an appropriate disposition," given the severity of the offense.

¶18 Relatedly, as to Parkman's character, the sentencing court found it significant that Parkman had "a long record … a really full record from 2014 on." The court was aware that Parkman had ten convictions between 2012 and 2020, some encompassing multiple counts—including a 2016 felony battery charge with a different victim and a 2017 misdemeanor disorderly conduct charge with T.S. For some of these offenses, Parkman was placed on probation; twice, however, the probation was revoked. In addition, as previously mentioned, Parkman faced pending felony charges for domestic violence offenses against T.S. The State argued that "another period of probation is [not] going to do what prior periods of probation haven't done"—that is, serve as "an effective consequence for" Parkman. The sentencing court implicitly agreed, concluding that a jail sentence was warranted, in part, because of the "close to a dozen different cases in that short period of time."

¶19 As to the third factor, the sentencing court remarked, "As far as protecting the public—if we're not going to protect women in this community by people who are using [pepper] spray to control them, who are we protecting?"

9

Accordingly, the court agreed with the State's recommendation, imposing six months' jail time.

¶20     The record thus reflects that there were several facts or considerations significant to sentencing, including: Parkman's use of pepper spray as a weapon; the fact that T.S. was a former romantic partner and the mother of Parkman's child; what the court perceived as Parkman's belief that he could "control someone with violence"; and Parkman's extensive criminal history, including convictions and pending domestic violence charges concerning T.S. Of course, the sentencing court could not and did not consider how the COVID-19 pandemic, as it now exists, might impact Parkman's term of incarceration. But it is speculative to simply assume, as Parkman does, that the court's "entire approach to sentencing would have been different" if the court had understood the impact of the pandemic, such that it would have "altered" its initial "calculus" favoring incarceration over probation. Again, in this case, the "new factor" analysis concerns the imposition of the sentence itself, not when or how that sentence is served. Parkman's sentence was based almost entirely on the nature of the offense and his character, factors unaffected by the pandemic.

¶21     Relatedly, Parkman misses the mark in attributing significance to the circuit court's March 17, 2020 sua sponte decision to delay his jail report date until June 1 (this was the first of several stays). In Parkman's view, this is "evidence that [the] circuit court *did* find the COVID-19 pandemic highly relevant to … Parkman's jail sentence." But the court's determination that Parkman should not serve a term of incarceration starting April 2020 does not bear on whether that sentence should be served *at all*.

¶22   In sum, Parkman has not demonstrated, by clear and convincing evidence, a new factor supporting sentence modification. Accordingly, I affirm.[5]

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] In light of my conclusion that Parkman has not established a new factor, I do not address the State's alternative argument that a defendant in Parkman's position is entitled only to corrective measures directed to changing conditions of confinement, and not to sentence modification. *See **Barrows v. American Family Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

11